MARY ALEXANDER, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed February 7, 1928.

*Corpus Juris-Cyc. References: Carriers, 10CJ, p. 620, n. 83; p. 714, n. 75; p. 716, n. 77.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.*, for appellant.

*S. T. G. Smith* and *A. Courtney Davis* for respondent.

SUTTON, C.—This is an action for personal injuries sustained by the plaintiff while a passenger on defendant's railroad train en route from New Albany, Mississippi, to St. Louis, Missouri. The injuries sued for resulted from the derailment of the train near Menfro, Missouri. Plaintiff is, and was at the time of her injury, the wife of Pate Alexander, who was employed by The Pullman Company as a metal screen worker at its plant in St. Louis. On application of her husband, plaintiff procured from defendant a special fare order entitling her to purchase thereunder a ticket over defendant's railroad from New Albany to St. Louis at one-half the regular fare. This special fare order contained the following provision: "Holder assumes all risks of accidents and damages while using tickets issued on this order, without any claim on the St. Louis-San Francisco Railway Company." Beneath this provision was this statement: "Above conditions accepted," which was followed by plaintiff's signature. Plaintiff was riding on a ticket purchased under this order, at the time she was injured. It appears to be conceded that the derailment of the train whereby plaintiff was injured resulted from the negligence of defendant, or its servants.

The trial, with a jury, resulted in a verdict and judgment in favor of plaintiff for $750, and the defendant appeals.

Defendant assigns error here upon the refusal of its instruction in the nature of a demurrer to the evidence. In support of this assign-

ment, the defendant relies solely upon the stipulation in the special fare order providing that the holder assumes all risks of accidents and damages while using ticket issued on said order, without any claim on the railway company. Defendant, giving full recognition to the general rule that the stipulation of a common carrier of passengers exempting it from liability for injuries to a passenger resulting from its negligence is void as against public policy, insists upon the validity of the stipulaton in this case on the ground that it was made in consideration of a reduced fare.

It is contended, on authority of Kansas City Southern Ry. Co. v. Van Zant, 260 U. S. 459, that under the Hepburn Act, which provides "that no common carrier . . . shall . . . directly or indirectly issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees and their families, its officers, agents, surgeons, physicians, and attorneys at law," Congress has entered the field of interstate transportation of passengers by railroads, relative to the fares that may be charged therefor. and the persons to whom free passes or reduced fares may be lawfully granted, and that since the plaintiff was on an interstate journey when she was injured, the Federal decisions must control in the determination of defendant's liability or not for her injury.

Defendant likens this case to cases decided in both the Federal and State courts, wherein it is held competent for the carrier to contract against liability for its negligence resulting in injury to a person riding on a free pass, and argues that there is no distinction in principle between gratuitous transportation and transportation bought at a reduced fare, in so far as concerns the right of the carrier to contract against liability for its negligence.

The text of 10 Corpus Juris 714, which is supported by a multitude of cases, reads as follows:

"In analogy to the rule established by the great weight of authority in the case of carriers of goods, that any contract relieving the carrier from liability for negligence is invalid, it is well settled that any contract purporting to exempt a common carrier of passengers from liability for negligence of itself or its employees to a passenger, particularly when carried for hire, is void, as being against public policy; and the authorities are practically unanimous in support of the proposition that no contract, condition, or limitation will relieve the carrier from liability to a passenger carried for compensation for the consequences of the negligence of the carrier or its employees, or modify that liability so as in any way to restrict it within the limits fixed by the common law, notwithstanding such contract is agreed to by the passenger in consideration of special concessions as to rates or otherwise."

In Buckley v. Bangor & Aroostook R. Co., 113 Me. 164, 167, the court said:

"It is settled with practical uniformity of decisions that a common carrier of passengers cannot, by antecedent contract or release, exempt itself from liability to a passenger for hire, for its own negligence, or that of its servants, no matter in what way the hire or compensation has been paid, or is to be paid."

In Louisville, New Albany & Chicago Ry. Co. v. Faylor, 126 Ind. 126, 130, the court said:

"A stipulation that the carrier shall not be bound to the exercise of care and diligence is in effect an agreement to absolve him from one of the essential duties of his employment, and it would be subversive of the very object of the law to permit the carrier to exempt himself from liability by a stipulation in his contract with a passenger, that the latter should take the risk of the negligence of the carrier, or of his servants. The law will not allow the carrier thus to abandon his obligation to the public, and hence all stipulations which amount to a denial or repudiation of duties which are of the very essence of his employment will be regarded as unreasonable, contrary to public policy, and therefore void."

In Gulf, Colorado & Santa Fe Ry. Co. v. McGown, 65 Tex. 640, 646, the court said:

"The relation of passenger and carrier is created by contract, express or implied, but it does not follow from this that the extent of liability or responsibility of the carrier is, in any respect, dependent on a contract. In reference to matters indifferent to the public, parties may contract as they please; but, not so in reference to matters in which the public has an interest. For the purpose of regulating such matters, rules have been established, by statute or the common law, whereby certain duties have been attached to given relations and employments. These duties attach as matter of law, and without regard to the will or wish of the party engaged in the employment, or of the person who transacts business with him, in the course thereof; and this is so, for the public good. Duties thus imposed are not the subject of contract. They exist without it, and cannot be dispensed with by it. The violation of such a duty is a tort. The law declares that it is the duty of a public carrier of passengers to use the highest degree of care, to insure their safety. Why was not this left to be settled by the contract of the carrier and passenger? Certainly for no other reason than that the employment itself was of such a nature as to make it a matter of puble concern."

In Jacobus v. St. Paul & Chicago Ry. Co., 20 Minn. 125, 129, the court said:

"There are two distinct considerations upon which the stringent rule as to the duty and liability of carriers of passengers rests. One is a regard for the safety of the passenger on his own account, and the other is a regard for his safety as a citizen of the State. The latter is a consideration of public policy growing out of the interest which

the State or government as *parens patriae* has in protecting the lives and limbs of its subjects. . . . So far as the consideration of public policy is concerned, it cannot be overridden by any stipulation of the parties to the contract of passenger carriage, since it is *paramount* from its very nature.''

In Denver & Rio Grande R. Co. v. Whan, 39 Colo. 230, the court said:

''A common carrier may not exempt itself by contract from liability for negligently performing a service which it is its duty to perform. . . .

''The grounds upon which this prohibition rests have been variously stated by the courts, as that such an exemption is against public policy; that the public is interested in the exercise of care and diligence on the part of the carrier; that it is unreasonable for any common carrier to contract for the privilege of being negligent; that the public is concerned with the life and security of its citizens; and that the obligations of a common carrier arise from the nature of the business in which it is engaged, and being imposed by law, it will not be permitted to escape such obligations by a contract exempting it from the consequences of negligence in the transaction of its business. On the other hand, with respect to duties which it is under no obligation to perform, it may limit its liability by contract, and in such cases the liability of the carrier to one injured by its negligence will depend upon the terms of such contract.''

In Walther v. Southern Pacific Co., 159 Cal. 769, the court said:

''Independent of statutory provisions, it is almost universally held that any contract purporting to exempt a common carrier of persons from liability for negligence of himself or his servants to a passenger carried for compensation is void, as being against public policy, and it is immaterial in such cases that the attempted limitation on such liability is agreed to by the passenger in consideration of special concessions in the matter of rate of fare or other departure from the rules applicable to passengers paying full fare. It is enough that there is any consideration for the carriage.

''The person admitted to his vehicle by a common carrier, for the purpose of carriage, for any compensation, is a passenger, with all the rights possessed by any passenger so far as the exercise of care for his safe carriage is concerned. By the great weight of authority, however, in the absence of provision to the contrary, such a contract of exemption from liability for negligence is upheld, at least so far as any except what is called in the opinions wanton or wilful or gross negligence is concerned, in the case of a passenger who is carried solely as a matter of favor, and without any compensation, or advantage whatever to the carrier.''

In Quimby v. Boston & M. R. Co., 150 Mass. 365, the court speaking with reference to the right of the carrier to contract against liability to a person using a free pass, said:

"The definition of a common carrier, which is that of a person or corporation pursuing the public employment of conveying goods or passengers for hire, does not apply under such circumstances. The service which he undertakes to render is one which he is under no obligation to perform, and is outside of his regular duties. In yielding to the solicitation of the passenger, he consents for the time being to put off his public employment, and to do that which it does not impose upon him. The plaintiff was in no way constrained to accept the gratuity of the defendant; it had been yielded to him only on his own solicitation. When he did, there is no rule of public policy, we think, that prevented the carrier from prescribing, as the condition of it, that it should not be compelled, in addition to carrying the passenger gratuitously, to be responsible to him in damages for the negligence of its servants. It is well known that, with all the care that can be exercised in the selection of servants for the management of the various appliances of a railroad train, accidents will sometimes occur from momentary carelessness or inattention. It is hardly reasonable that, beside the gift of free transportation, the carrier should be held responsible for these, when he has made it the condition of his gift that he should not be. Nor, in holding that he need not be, under these circumstances, is any countenance given to the idea that the carrier may contract with a passenger to convey him for a less price on being exonerated from responsibility for the negligence of his servants. In such a case the carrier would still be acting in the public employment exercised by him, and should not escape its responsibilities, or limit the obligations which it imposes upon him."

In Marshall v. Nashville Railway & Light Co., 118 Tenn. 254, the court declared that a railroad company, carrying a person gratuitously, does not occupy the position of a common carrier, but rather that of a mandatary, so far as its liability for negligence is concerned.

In Powell v. Union Pacific R. Co., 255 Mo. 420, 164 S. W. 628, it was urged that the decedent for whose wrongful death the action was brought, was riding on a free pass when he met his death, that he was therefore not a passenger, and that a stipulation exempting the railroad company from liability was valid and a complete defense to the action. The court ruled, however, that the pass was issued upon a valuable consideration, and that the stipulation exempting the company from liability was therefore invalid, and in so ruling the court said:

"Coming still closer home, the rule is that under a wise and settled doctrine of public policy common carriers for hire are denied the right to contract against liability for negligence in the carriage of passengers. The carrier may stipulate anent its liability and for ex-

emptions, but such stipulation must be just and reasonable in the eye of the law. So, the rule is that a person using a pass for transportation, issued on a sufficient consideration, as did Powell, is a passenger to all intents and purposes and is under the protection of the rules of law prescribing the duties of a carrier to a passenger."

The Federal decisions are to the same effect. [New York Central R. Co. v. Lockwood, 84 U. S. 357; Grand Trunk Ry. Co. v. Stevens. 95 U. S. 655; Norfolk Southern R. Co. v. Chatman, 244 U. S. 276; Northern Pacific Ry. Co. v. Adams, 192 U. S. 440.]

In the Lockwood case, Lockwood received the injuries for which the suit was brought, whilst traveling on a drover's pass, and the court in disposing of the case said:

"It may be assumed *in limine,* that the case was one of carriage for hire; for though the pass certifies that the plaintiff was entitled to pass free, yet his passage was one of the mutual terms of the arrangement for carrying his cattle. The question is, therefore, distinctly raised, whether a railroad company carrying passengers for hire, can lawfully stipulate not to be answerable for their own or their servants' negligence in reference to such carriage. . . .

"The conclusions to which we have come are—

"*First.* That a common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law.

"*Secondly.* That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants.

"*Thirdly.* That these rules apply both to carriers of goods and carriers of passengers for hire, and with special force to the latter.

"*Fourthly.* That a drover travelling on a pass, such as was given in this case, for the purpose of taking care of his stock on the train, is a passenger for hire."

In the Stevens case, wherein an alleged free pass was involved, the court said:

"It is evident that the court below regarded this case as one of carriage for hire, and not as one of gratuitous carriage, and that no sufficient evidence to go to the jury was adduced to show the contrary; and hence, that under the ruling of this court in Railroad Company v. Lockwood, 17 Wall. 357, it was a case in which the defendant, as a common carrier of passengers, could not lawfully stipulate for exemption from liability for the negligence of its servants. In taking this view, we think the court was correct. The transportation of the plaintiff in the defendant's cars, though not paid for by him in money, was not a matter of charity nor of gratuity in any sense. . . . There was a consideration for it, both good and valuable. It necessarily follows, therefore, that it was a carrying for hire. Being

such, it was not competent for the defendant, as a common carrier, to stipulate for the immunity expressed on the back of the pass."

In the Chatman case, wherein a drover's pass was involved, the court said:

"In Railroad Company v. Lockwood, 17 Wall. 357, 384, it was decided that a person traveling on a 'drover's pass,' issued upon a live stock contract precisely similar in its terms to that which we have in this case, was a passenger for hire and that a release from liability for injuries caused by the carrier's negligence was void because a common carrier could not lawfully stipulate for such exemption.

"This decision was rendered in 1873, and has been frequently approved: . . . This court continues of the opinion . . . that the Lockwood case must 'be regarded as establishing a settled rule of policy.' "

In the Adams case, which was an action to recover for the wrongful death of a person who at the time he met his death was riding on a free pass, conditioned that he assumed the risks of the negligence of the carrier's employees, the court, in holding the condition valid, said that decedent was riding not as a passenger for hire, but merely as a licensee, and that the railway company was not as to him a carrier for hire.

From the foregoing authorities, it appears that the courts make a wide distinction between gratuitous transportation and transportation bought at a reduced fare.

The defendant, adopting the view expressed by a majority opinion in Anderson v. Erie R. Co. (N. Y.), 119 N. E. 557, urges in argument that, as in the granting of gratuitous transportation, so in the granting of transportation at a reduced fare, the concession made by the railway company affords a consideration for the contract exempting the company from liability, and that therefore if in the one instance the exemption contract is valid, it should in the other instance also be valid. The argument is without the reason of the rule it invokes. The rule which permits the railway company to contract against liability in case of gratuitous transportation does not proceed upon the theory that in such case there is a consideration for the exemption contract, but proceeds upon the theory that there is a lack of consideration or compensation for the contract of carriage, so that the railway company with the consent of the person to be carried puts off its character as a common carrier as to him, and becomes a mere mandatary, and the relationship of common carrier and passenger does not exist, and it is on this theory that in such case the exemption contract is upheld and enforced. But where the railway company exacts any compensation for the carriage, the relationship of common carrier and passenger, and the liability of the company as a common carrier, persists, and it is on this theory that in such case the exemption contract is held invalid. In other words,

the principle is that a common carrier as such may not purchase immunity from the consequences of its negligence by making concessions by the way of reduced fare. It is only where the common carrier by granting gratuitous transportation puts off its character as a common carrier and becomes a mere mandatary, that it is competent for it to exempt itself by contract from liability.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.

