**Ira L. BRAUGHTON, Individually and on behalf of the Estate of Ester L. Braughton, Deceased, Ira L. Braughton, Individually and as Father and Surviving Parent of Linda Kay Braughton, an infant, Deceased, and Ira L. Braughton, Individually and as Father and Surviving Parent of Connie June Braughton, an infant, Deceased, Plaintiff,**

v.

**UNITED AIR LINES, INC., and Trans World Airlines, Inc., Defendants.**

**No. 11742.**

United States District Court
W. D. Missouri, W. D.
June 1, 1960.

Robert A. Schroeder, Kansas City, Mo., for plaintiff.

Clay C. Rogers, Rogers, Field, Gentry & Jackson, Kansas City, Mo., for defendant United Air Lines, Inc.

Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., for defendant TWA.

RIDGE, Chief Judge.

By leave of Court defendant Trans World Airlines, Inc., re-files its motion for summary judgment to plaintiff's second amended complaint, the same as filed to plaintiff's original complaint herein.

██ The plaintiff, Ira L. Braughton, brings this action individually and on behalf of the Estate of his Deceased Wife, Ester L. Braughton, and his two children, Linda Kay Braughton and Connie June Braughton, who were age nine and six, respectively, at the time of their death. The action is brought in three counts for the wrongful death of the above-named decedents, arising out of the "Grand Canyon Disaster" occurring on June 30, 1956. The disaster occurred in the vicinity of Flagstaff, Arizona; hence Arizona law and the Wrongful Death Statute of that State provide the basis for this action. Jurisdiction is here premised on diversity of citizenship and requisite jurisdictional amount. Trans World Airlines, Inc. (TWA) and United Air Lines, Inc. (UAL) are Delaware corporations. Plaintiff is a resident of the State of Kansas. Suit was originally filed in the United States District Court for the Southern District of New York on December 10, 1957, and subsequently transferred to this Court pursuant to Section 1404(a) of Title 28 U.S.C.A.

Defendant TWA has moved for summary judgment in its favor on the claims asserted against it. Tersely stated, the factual premise of such motion is that plaintiff's decedents accepted passage on the TWA plane involved in the above casualty, under certain gratuitous passes which contained specific "Conditions of Contract." TWA contends that such "Conditions of Contract" bar recovery of any damages from it as here claimed, even if it is assumed that plaintiff could establish by evidence some common law

negligence on its part in causing the casualty in question. However, it should be noted that in paragraph "Thirtieth" of his second amended complaint plaintiff alleges that "the accident and the death of this plaintiff's decedents was occasioned wholly or in part by the gross and wanton negligence of the defendant Trans World Airlines, Inc., its agents, servants and employees, in the ownership, operation, control, dispatch and maintenance of its aircraft and airline facilities." Notwithstanding, the Court is of the opinion that TWA's motion supra is ripe for ruling, regardless of the nature of the issues raised thereby, in light of the particular facts before the Court adduced and established at pre-trial conference.

Fourteen (14) cases arising out of the Grand Canyon Disaster have been filed in this Court. All such cases are pending before this Judge. Numerous pre-trial conferences have been held in certain consolidated groups of such cases. At those pre-trial conferences evidence has been adduced, much by stipulation of the parties, concerning records, the contents of written documents, directives, and regulations of TWA, United Air Lines, Inc., and the Government, relating and applicable to the circumstances leading up to and surrounding that disaster. Although some of the cases mentioned merely name United Air Lines, Inc. as defendant therein; others join TWA as a party defendant. In light of that situation, many questions of law and fact have been developed as common to all such litigation. Counsel for all of the parties plaintiff and defendant therein were invited by the Court to attend and participate in all pre-trial conferences held relating to the above casualty, even though a particular conference was not scheduled in their particular case or in each of the above-mentioned cases, to the end that evidence adduced and stipulations made, of a general character, would be made known to, and be made available to, all counsel at subsequent pre-trial conferences and the actual trial of the case or cases in which they were retained, with-

out the necessity of retracing established facts as to which there could be no dispute. Counsel for plaintiff, Braughton, and TWA have co-operated with the Court in the above endeavor, and have been present at all such conferences. As a consequence, the actual trial of the issues in the case at bar will be materially expedited and shortened as the result of the record made at the pre-trial conferences so held by this Court in respect to the Grand Canyon Disaster. A transcript of the proceedings had at all such conferences has at all times been on file in this Court, available to all interested counsel and parties. To the extent that said transcripts are pertinent to the issues in this case, and for the purpose of ruling TWA's instant motion for summary judgment herein, said transcripts are now made a part of the record in the instant action.

■ Suffice to say, that from the evidence adduced and facts established of record in the aforementioned transcripts as to which there can be no dispute between the parties, here, as well as from the orders entered by this Court in Consolidated Cases Nos. 11061, 11110, 11116, 11138 and 11388, which are incorporated herein by reference, it is transparent that, assuming all facts to be true which plaintiff here states he will rely on at the trial of this case to establish gross and wanton negligence on the part of TWA, it is the opinion of this Court that the same are wholly insufficient to require that issue to be submitted for determination by the trier of the facts herein, and that, if such procedure should hereafter follow, this Court would be required to direct a verdict in favor of TWA on that issue at the close of the plaintiff's case. That being so, TWA's motion for judgment in its favor on the claim plaintiff here makes against it, is now ripe for ruling.

It is undisputed in the record here that Ira L. Braughton, an employee of TWA, applied to TWA for passes for his wife and two daughters for a round-trip between Kansas City, Missouri, and Los Angeles, California, that they might take a personal vacation. Such pass privilege

was exercised by Mr. Braughton and granted to his wife and children, subject to certain regulations contained in the TWA Management Policy and Procedure Manual. It is thereby established that passes provided by Trans World Airlines to its employees are granted without charge therefor. Said privileges are not obtained by TWA employees pursuant to any collective bargaining agreement, nor assured to such employees by any contract of employment. Said passes are not a part of the wages or consideration paid to TWA employees for their services. The wages and salaries of TWA employees are not affected in any way by the pass privileges. However, a service charge of $1.00 for each 500 miles, or fraction thereof, up to a maximum of $10.00, is placed on employees of TWA, to defray a portion of the expense TWA incurs in issuing passes to its employees and members of their families. The Company derives no profits from such service charge, but expects thereby to approximately break even on some of the expense items incident to issuance of passes, such as food served, Pass Bureau maintenance, insurance, forms, and the handling of them, which add to the Company's cost. Under such policy, children pay one-half the amount of the cash service charge. No tax is paid on the service charge which is collected at the ticket counter when the pass is delivered to the person to whom it is issued.

As above noted, passes were issued to plaintiff's wife and his two children, in accordance with the TWA Management Policy and Procedure Manual. When such passes were delivered to Mrs. Braughton, she paid a $6.00 service charge for the pass issued to her, and a $3.00 service charge on each of the children's passes. Mrs. Braughton then signed her pass and signed the children's names to each of their passes. Each of said passes contained the following stipulation:

"Conditions of Contract.

" * * * insofar as transportation furnished hereunder is not subject to the rules of said Convention, the holder agrees to assume all risk of accident and loss of every character, including personal injury, death, and loss or damage to property, and agrees that TWA shall not be liable for any such loss, damage, injury or death, whether caused by the negligence of TWA or its agents or otherwise."

It is admitted that the rules of "Warsaw Convention" do not apply to the case at bar because international travel is not involved herein.

Mrs. Braughton and her two daughters boarded TWA Flight 2, Lockheed Constellation aircraft, in Los Angeles, California, at 9:01 A.M., P.S.T., for their return home to Kansas City, Missouri, from the vacation trip. United Air Lines Flight 718, a DC–7 aircraft, took off from the same airport at 9:04 A.M. The said airplanes came into collision at approximately 11:30 A.M., M.S.T., in the vicinity of Flagstaff, Arizona. For the purpose of this motion, we here adopt plaintiff's statement of facts which he claims establish gross and wanton negligence on the part of Trans World Airlines, Inc., which are as follows:

"Trans World Airlines (TWA) flew its airplane in question at an altitude of 21,000 feet, and was at such altitude at the time of the collision, although it knew that the United Air Lines (UAL) plane in question was traveling pursuant to a flight plan of 21,000 feet altitude and that the two planes were on courses that crossed, and that the two planes were converging in the same vicinity at approximately the same time, and even though TWA had been denied permission by the Civil Aeronautics Administration (CAA) to fly at the altitude of 21,000 in controlled airspace due to the flight plan of UAL at that altitude.

"The TWA plane could have made its entire flight on a Federal Airway in space controlled by CAA and in a space area to which neither the UAL plane in question nor any other

plane would be assigned. Nevertheless, the TWA plane went outside the controlled airspace on a route of TWA's choosing through the Grand Canyon area, a heavily traveled area, and was in such uncontrolled area at the time of collision, even though the weather forecast for the area on the day of the collision was thunderstorms with high clouds building up to 25,000 and 30,000 feet."

(Note: The above statement of facts was filed with the Court after preliminary, or get-together, pre-trial conference was held in relation to the Grand Canyon Disaster cases. Subsequent thereto, substantial use of the pre-trial facility has been employed in connection with the litigation arising therefrom. As a consequence, it has been conclusively established before this Court that the casualty in question occurred "off airways" and not within a specifically controlled "area" or "zone" established by CAA, subject to "advisory or warning service" by ARTC personnel. (See P.T. Trans. and Memo. Consol. Cases, 11061, 11110, 11116, 11138 & 11388, Oct. 6, 1959, this Court.) Nevertheless, for the purpose of the record, plaintiff requests that the Court consider the above statement of facts in connection with any ruling made on the instant motion of TWA for summary judgment. The conflict between the facts as stated by plaintiff and those conclusions established and shown to exist beyond any doubt, does not militate against a ruling here being made on such motion.)

In the absence of facts establishing gross or wanton negligence on the part of TWA, there can be no question but that the "Conditions of Contract" under which a TWA pass was issued to Mrs. Braughton exonerate TWA from liability for any ordinary negligence claim alleged by plaintiff as causing her wrongful death. (cf.) Northern Pacific Railway Company v. Adams, 1904, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513; Boering v. Chesapeake Beach R. R. Co., 1904, 193 U.S. 442, 24 S.Ct. 515, 48 L.Ed. 742; Kansas City Southern R.

Co. v. Van Zant, 1923, 260 U.S. 459, 43 S.Ct. 176, 67 L.Ed. 348; Francis v. Southern Pac. Co., 1947, 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798. Section 483(b), Title 49 U.S.C.A. is authority for air carriers, under the Civil Aeronautics Act of 1938, (49 U.S.C.A., Chap. 9) to issue "tickets or passes for free or reduced-rate transportation to their directors, officers, and employees and their immediate families; * * *." under such conditions as the CAB may prescribe. It is undisputed that a copy of TWA rules with respect to free passes for its employees was at all times material on file with CAB, as provided by Civil Aeronautics Regulations, Part # 223. We consider the general legal effect of Section 483(b), supra, and such regulations, to bring airlines passes within the ambit of the ruling made in the above-cited opinions of the Supreme Court, handed down in relation to similar provisions for passes issued by railroads under the Hepburn Act. 49 U.S.C.A. § 1(7). By enacting the Civil Aeronautics Act, Congress has preempted the field relating to airlines passes, the same as it has done in relation to railroad passes. The legal effect thereof is to be determined by Federal, to the exclusion of any State, law which might be applicable. (cf.) Francis v. Southern Pac. Co., supra, 333 U.S. loc. cit. 450, 68 S.Ct. loc. cit. 613; Lichten v. Eastern Airlines, Inc., 2 Cir., 1951, 189 F.2d 939, 25 A.L.R.2d 1337; Herman v. Northwest Airlines, Inc., 2 Cir., 1955, 222 F.2d 326. As a consequence of the foregoing, it seems clear that plaintiff cannot in this action obtain a judgment for damages against TWA, based solely on common law negligence as proximately causing the wrongful death of Ester L. Braughton, deceased; nor can her estate legally sustain any such claim.

But, notwithstanding such "Conditions of Contract" provision bars a claim for Mrs. Braughton's death, it is plaintiff's further contention, relying on Pennsylvania Company v. Purvis, 1906, 128 Ill. App. 367, and Flower v. London and North-Western Ry. Co. (C.A. 1894 C.A. 2, Hugh B. 63 L.J.Q.B. 547, 70 L.F. 829, 42

W.R. 519), that such provision could not bar his claim for the death of his two deceased minor children, the older of whom was nine years of age; or, the claim here made on behalf of their estate, even for common law negligence. This raises a very interesting question as to which there is a paucity of case law. See: Annotation 41 A.L.R. 1099, entitled, "Stipulations in Passes as Binding on Infants." The following authorities sustain the proposition that a claim on behalf of a minor is barred by the stipulations avoiding liability in connection with a free railroad pass issued in consideration of the stipulation stated therein. Pinnell v. St. Louis-San Francisco Ry. Co., Mo.Sup.1924, 263 S.W. 182, 41 A.L.R. 1092, and Griswold v. New York & N. E. R. Co., 1895, 53 Conn. 371, 4 A. 261. In the Pinnell case, supra, a 19-year-old boy was killed in a train collision while riding as a free pass passenger. The Supreme Court of Missouri, applying federal law, held that the stipulation avoiding liability was valid; did not violate public policy; and, constituted a complete defense to the action. In the Griswold case, supra, a 17-year-old boy employed by a restaurant to sell sandwiches on defendant's train, was furnished a free pass which provided that the holder assumes all risk of injury or death. The deceased minor was on a personal trip, riding in the baggage car, at the time of a train collision which caused his death. The Supreme Court of Connecticut held that the pass was gratuitous and not a part of the consideration to induce the restaurant to open a lunch room in defendant's stations and that the trip not being for the benefit of defendant, the stipulation avoiding liability was valid. The Griswold opinion, supra, was cited with approval by the Supreme Court in its Northern and Boering opinions. The Pennsylvania Company and Flower opinions, supra, relied on by plaintiff, antedating, as they do, the Northern, Boering and Francis cases, supra, cannot be considered as militating against the validity of the ruling hereinafter made.

■ In the case at bar it is clearly·established that the passes issued to plaintiff's decedents were without consideration except that contained in the "Conditions of Contract" printed on the reverse side thereof. True, plaintiff states that "one of the reasons for (his) accepting employment" with TWA was that he had been advised he "would be entitled to passes on TWA flights for myself and the members of my family." Yet, there is no evidence in this record that tends to establish such a condition was ever made a part of plaintiff's contract of employment with TWA, such as considered by the Court in Martin v. Greyhound Corporation, 6 Cir., 1955, 227 F.2d 501. Absent an affirmative agreement that such a condition was, expressly or impliedly, a part of plaintiff's contract of employment, plaintiff's singular understanding regarding the issuance of passes by TWA is insufficient to establish an independent consideration for the passes issued by TWA, *aliunde* the pass program as established by TWA and approved by the CAB.

As said in the Pinnell case, supra, the passes in question "cannot be otherwise construed than as a (gratuitous) benefit" to the plaintiff's decedents. As such, said passes are the only premise upon which plaintiff might sustain proof of the allegations of his complaint, that his "decedents were lawfully aboard" one of TWA's aircraft at the time of the disaster. "Absent a consideration" other than that established for the issuance of the passes in question, plaintiff's decedents were "trespassers" on the TWA aircraft, and—"this simply is passing." 263 S.W. loc. cit. 185.

■■ Plaintiff's contention that the bringing of the instant action is tantamount to a repudiation of any contract his infant decedents had with TWA, cannot premise liability on TWA at common law. As above stated, there can be no question but that Mrs. Braughton was, at most, a gratuitous licensee on the TWA plane. She was accompanied in that status by her two children. It has been held that a minor child accompanying

its mother on a shopping mission has the same status as the mother, and is not a mere licensee if the mother is invited to enter on the premises of another. See, Grogan v. O'Keefe's Inc., 267 Mass. 189, 166 N.E. 721; Custer v. Atlantic & Pacific Tea Co., D.C.Mun.App., 43 A.2d 716. We can see no legal rhyme or reason why that legal axiom should not be applied to a child accompanying a parent who is at most a gratuitous licensee on the premises of another. So, no matter from what legal vista TWA's liability to plaintiff for the wrongful death of his infant daughters is viewed, it follows, as the night the day, that their mother being at most a gratuitous licensee, and the children being in her custody at the time in question, they could only occupy the same legal status as that occupied by their mother. Therefore, even though the infants' contracts with TWA may be considered repudiated by plaintiff, the undisputed fact is that plaintiff's decedents remain gratuitous licensees of TWA. In either such event, the only legal duty TWA owed to any one of plaintiff's decedents was not to willfully or wantonly injure them while they were occupants on its airplane.

It is conceded that a carrier may not, by stipulating with a gratuitous passenger, relieve itself from liability for wanton and willful misconduct. New York Central Ry. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502; Martin v. Greyhound Corp., 6 Cir., 227 F.2d 501, certiorari denied 350 U.S. 1013, 76 S.Ct. 657, 100 L.Ed. 873.

As above noted, the casualty in question occurred in Arizona. Hence the substantive law of Arizona is controlling upon the question of whether or not a submissible issue for gross and wanton negligence on the part of TWA can be sustained under the undisputed facts as known by the parties. Nine (9) opinions of the Supreme Court of the State of Arizona have been cited to this Court for consideration in determining whether the facts here spell out gross and wanton misconduct on the part of TWA. In Arizona, as elsewhere, it is a question of law whether facts adduced are sufficient to submit to a jury the issue of gross and wanton negligence, as will appear from the following. In Bryan v. Southern Pacific Co., 79 Ariz. 253, 286 P.2d 761, 50 A.L.R.2d 1, the Court held that making of a "flying switch" across a principal street of Phoenix, Arizona, in the night-time, without bells, whistle, lights, brakeman, guards or an adequate warning device, was gross negligence because it involved a high degree of probability that substantial harm would result therefrom. Alabam Freight Lines v. Phoenix Bakery, Inc., 64 Ariz. 101, 166 P.2d 816, involved a tractor-trailer crossing the "no-crossing" line on the highway in an attempt to pass another tractor-trailer on a curve of the highway as it inclined toward the crest of a hill which obscured visibility further down the highway. At the place of the occurrence in that case there were steep cliffs on either side of the roadway which prohibited more than two trucks passing abreast. The tractor-and-trailer units in that case were approaching from the opposite direction. The evidence tended to show that plaintiff was traveling at an excessive speed. Under such facts, it was held that plaintiff's contributory negligence did not bar recovery because of the defendant's willful and wanton negligence. In Womack et al. v. Preach, 63 Ariz. 390, 163 P.2d 280, it was held that an employer was grossly negligent for permitting an employee to drive a motor vehicle with brakes which the employer knew were defective. In that case the defendant's heavily loaded truck had been proceeding at a speed of about 15 miles per hour, through a busy intersection, when a 4½-year-old boy darted into the street from between parked cars; the truck was about fifteen (15) feet from the boy who was running from the truck; the driver applied the brakes and swerved, to no avail; the truck could not be stopped by either the foot-brake or hand-brake within less than thirty (30) feet from the point of impact. There was testimony that with normal brakes the vehicle could have been stopped with-

in ten (10) to fifteen (15) feet. The trial court's submission of wanton negligence in that case was sustained. The contrary result was reached, however, in the later case of Southern Pacific Co. v. Baca et al., 77 Ariz. 173, 268 P.2d 968, where the plaintiff's testimony tended to establish a train traveling across a busy city thoroughfare at a speed of thirty to forty miles an hour, without blowing its whistle. Defendant's testimony not only contradicted plaintiff's testimony as to speed and warning, but also established that there were bells ringing and lights flashing at the intersection which the plaintiff ignored when he began crossing the defendant's track. The giving of an instruction on wanton negligence at the request of plaintiff was held to be reversible error under those circumstances. Scott v. Scott, 75 Ariz. 116, 252 P.2d 571, involved a 16-year-old defendant who was driving through a busy intersection at twenty-five miles per hour and who was not wearing eyeglasses as required by his driver's license. In that case, a pedestrian was struck when she stepped from the curb with her umbrella partly obstructing her view of the street. The trial court refused to instruct on wanton negligence. In affirming a judgment for the defendant the Supreme Court of Arizona stated that the evidence did not reasonably tend to establish wanton and willful misconduct because defendant's acts did not show a reckless disregard for plaintiff's safety and there was no high degree of probability that substantial harm would result. The Court said:

> "Wanton negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is 'in the air', so to speak. It is flagrant and evinces a lawless and destructive spirit." 252 P.2d loc. cit. 575.

In Robinson et ux. v. Lehnert, 71 Ariz. 454, 229 P.2d 708, a verdict was directed by the trial court in favor of plaintiff on the ground that defendants were wantonly and recklessly negligent in either running a stop-sign at an excessive speed or in failing to yield to plaintiff's oncoming automobile. The evidence was in dispute. The Supreme Court held that it was error to so direct a verdict and that the question should have been submitted to the jury. Butane Corp. v. Kirby, 66 Ariz. 272, 187 P.2d 325, involved a pickup truck and trailer which was parked on the pavement in a "dip" of a highway without lights while plaintiff's intestate was apparently changing a tire on the truck. The trial court's instructions in that case on wanton negligence of the defendant-driver were based upon excessive speed, defective brakes, the incompetency of the driver and his admission that he could not stop within the range of his vision in the "dip". In reversing the trial court, the Supreme Court held that the defendant's conduct under such circumstances was not tainted with that degree of recklessness which would justify the label of wanton misconduct. In that case, the Court stated (187 P.2d loc. cit. 336):

> "'* * * Although conduct to be reckless must be negligent in that it is unreasonable, it must be something more than negligent. It must not only be unreasonable, but it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent. *It must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great.*' Restatement, Torts, sec. 500, Comment a." (Emphasis supplied.)

In Barry v. Southern Pacific Company, 64 Ariz. 116, 166 P.2d 825, plaintiff's intestate, while intoxicated, took a "short-cut" through a vacant lot and attempted to cross the defendant's railroad tracks where he stumbled or lay down and went to sleep. The defendant's switch engine was traveling at a speed of about one (1) mile per hour, pushing a tank car. The headlights of the engine were blocked by the tank car; however, there were four switchmen riding on the front of the tank car and three of them were equipped with electric lamps capable of throwing a spot beam fifty to sixty

feet. The engine bell was ringing and the whistle sounding. The decedent's body was not seen until he was under the end of the tank car. The Court held that the defendant's employees had no reason to anticipate a man lying between the tracks and were not guilty of gross negligence. An automobile driver who was speeding on a heavily-traveled street, who had "tunnel vision" and who was not licensed to drive, was held to be acting without gross negligence, in Lutfy v. Lockhart, 37 Ariz. 488, 295 P. 975.

■ Section 500, Restatement of the Law, Torts, Vol. 2, was cited by the Supreme Court of Arizona in connection with its definition of wanton and willful misconduct in the Barry, Butane Corp., Robinson, Southern Pacific Co., Alabam Freight Lines, and Womack cases, supra. The remaining cases applied a test of gross negligence also in accordance with the Restatement rule. Suffice to say, it appears that the Supreme Court of Arizona has adopted the following Restatement rule as the law of Arizona:

"Sec. 500. Reckless disregard of safety defined.

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know the facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other, but also involves a high degree of probability that substantial harm will result to him." (Rest. of the Law, Torts, Vol. 2.)

The question of what constitutes gross negligence in the air has not been decided by the Arizona Courts. However, no reason presently appears why the courts of that state would not apply the ordinary rules of the common law to the fact situations and relationships created by aircraft as they would to carriers of passengers on land. (cf.) "Death of, or injury to, occupant of airplane from collision or near-collision with another aircraft." 12 A.L.R.2d 677, etc. In the Arizona cases supra the decision as to whether or not facts establish gross negligence was reached after a trial on the merits, but it is noted that in several such cases, the Supreme Court of Arizona reversed the trial court because the facts did not warrant the submission of gross and wanton negligence.

■ In the case at bar, the only factual situation relied on by plaintiff to establish gross and wanton negligence is that TWA had been denied a clearance for 21,000 feet, presumably because of UAL's Flight Plan, which showed that UAL was flying at that altitude; that TWA then requested, and obtained from A.R.T.C., a "1,000 on top"; that TWA knew, or by the exercise of due care should have known of such facts and condition, and that the same might, or would create a peril of collision between the TWA and UAL airplanes. Such facts are wholly insufficient, as a matter of law, to establish gross and wanton negligence on the part of TWA. Knowledge of the fact that the two planes were converging on the same general area, at the same altitude, could only be relevant for consideration by the trier of the fact as to the degree of care used by the TWA pilot to determine the probability of harm that might, or would reasonably arise and result from that factual situation. Gross and wanton negligence can only be established where it is shown that one intentionally did an act or failed to act under circumstances which invoked "a high degree of probability that substantial harm will result" to another. (Restatement supra.) The undisputed fact is, that all the occupants of the TWA and UAL airplanes perished in the Grand Canyon Disaster. Gross and wanton negligence on the part of TWA can only here be premised on facts from which the intent or mental processes of the pilot and co-pilot of its own plane may be inferred in the factual situation *when* the two airplanes were actually "seen or should have been seen." There is no such evidence, adduced or available, to establish that matter in the case at bar.

TWA's motion for summary judgment in its favor on the claim here asserted by plaintiff against it is sustained. Judgment will be entered in respect thereto when judgment is entered on the remaining issues between plaintiff and United Air Lines, Inc.

It is so ordered.