Anna McKAIG, Appellant,

v.

KANSAS CITY TERMINAL RAILWAY COMPANY, a Corporation, Respondent.

No. 23506.

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1962.

Swofford, Smith & Waisblum, Kansas City, for appellant.

William M. Stapleton, W. H. Bates, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is a suit by appellant, Anna McKaig, against respondent, Kansas City Terminal Railway Company, for damages in the sum of $25,000 for personal injuries suffered by appellant who tripped and fell when negligently directed into an unsafe place by a redcap employee of respondent.

As a result of the jury trial appellant received a verdict and judgment for $7,500. Thereafter, the trial court sustained respondent's motion for judgment in accordance with its motion for a directed verdict

at the close of all the evidence, set aside the verdict and judgment, and entered judgment for respondent. Appellant appealed requesting that her verdict and judgment for $7,500 be reinstated.

On this appeal we are presented a single question; namely, whether the provisions of the railroad passes issued to appellant barred her recovery.

The pertinent facts are undisputed and are as follows:

Appellant is a seventy-two year old widow who was planning a railroad trip from her home in Denver, Colorado to Indianapolis, Indiana to visit a relative. This necessitated passage on the Union Pacific Railroad to Kansas City, Missouri, and transfer there to the Wabash Railroad on east; and eventually on the New York Central Railroad to complete her trip.

Appellant applied to the Union Pacific Railroad for free passes for the trip from Denver to Indianapolis. It sent her a series of passes, one for each of the mentioned railroads. She commenced her journey by chair car on the Union Pacific, arriving at the Kansas City depot the 14th of December, 1958. Before leaving the train she asked the porter of her car to get her a redcap to assist her to the Wabash train and to take care of her luggage. A redcap was procured and she engaged him to take her and her luggage to the Wabash train which was waiting at another siding at the depot. She had made the trip before and had always engaged a redcap to give her that assistance.

The redcap took her by escalator up to the main level of the depot and back down again to the track level. The first attempt to reach the Wabash train was by way of a blocked passage. The redcap had her follow him to another passage, then "suddenly he says, 'Lady, here's your car right through there (indicating).'" The lighting and visibility were poor. She went as directed through a narrow passage between two baggage trucks and tripped and fell over the

unseen protruding handle of one of them and was injured.

The pertinent language of the two passes, which appellant had signed, is:

*Union Pacific Pass:* "The user assumes all risk of injury to person and to property and of loss of property, whether by negligence or otherwise, and absolves any company honoring this pass from all liability therefor."

*Wabash Pass:* "The user assumes all risk of death, injury, loss or damage to the user's person or property, whether due to negligence or otherwise, and neither the user nor any other person whatsoever, shall have any right or claim against the issuing company, its servants or agents, or any company or railway on whose lines or trains this pass may be honored, or its servants or agents, in respect or arising out of any such death, injury, loss or damage."

Respondent owns and operates the Union Station at Kansas City, Missouri, together with the tracks and related railroad facilities necessary for a railroad terminal. By admission, respondent is and was engaged in the operation of railway facilities in and about Kansas City including the Terminal and Union Depot facilities at Kansas City and the track level, platforms, common walks and passageways used for the loading and unloading of various trains, passengers, bags and equipment.

Respondent is owned by twelve trunk line railroads which enter Kansas City, Missouri, and those railroads, by contract have the "right and privilege" to operate their passenger trains over the tracks of Kansas City Terminal Railway Company and into and out of the Union Station, and of "using and enjoying" the Union Station for their railroad passenger business for which they pay respondent's expenses in operating its facilities. Both the Wabash Railroad Company and the Union Pacific Railroad Company are among the owners of the respondent and are parties to the mentioned contract.

Also admitted is that respondent had in its employment certain agents, servants, employees and redcaps, including the mentioned one, available for hire to assist persons in and about the Terminal and Union Depot premises and facilities and in moving persons, luggage and equipment to and from the various trains, platforms, passageways and common walks on and about the premises. This particular redcap at the time in question was carrying out his normal duties on behalf of his employer.

Certain of the provisions of the Local and Joint Passenger Tariff of the Interstate Commerce Commission provide: "The carriers parties to this tariff do not undertake to furnish station porter (red-cap) service generally, or at all stations, or at all times at stations where such service is furnished. When and where and to the extent that station porter (red-cap) service may be furnished by the carriers parties hereto, the charges will be * * * Kansas City (Union Depot) 15 cents for each piece so handled."

Every redcap at the Union Station at Kansas City was required to charge 15 cents per parcel and at the end of each day turn that money over to respondent employer. Tips could be retained by the redcap.

Before reaching the precise question upon which this decision must turn it is helpful to examine the case of Brown v. Terminal Railroad Association of St. Louis, Mo.App., 298 S.W.2d 471, cited and relied upon by all the parties and with which decision we agree. Brown was riding as a passenger on a free pass on the Wabash Railroad train when it was struck by a Terminal switching engine whose engineer negligently failed to heed a stop signal. Brown sued Terminal for his resultant injuries. The provisions on the Wabash pass in the Brown case are identical with those on the Wabash pass now before us. In holding that the provisions of the free pass prevented recovery by Brown the St. Louis Court of Appeals said: "Plaintiff must be held to have authorized Wabash to contract with Terminal for the use of the latter's facilities, and to have agreed that the provisions of the pass should protect Terminal to the same extent that they protect Wabash. The limitation of liability provided for in the pass extends to all railroads and facilities contributing to the accomplishment of the transportation as to all risks taken by plaintiff as a passenger on any part of the whole journey. When plaintiff boarded the Wabash train at Decatur, Illinois to be carried to St. Louis, Missouri he must be held to have agreed to transportation by Wabash not only to the end of the Wabash tracks but also over and across Terminal tracks and bridges and into and upon Terminal stations and facilities and thus and thereby to his destination in exactly the same manner as if the tracks, bridges, etc., were the property of Wabash. Plaintiff undertook to be carried the whole way at his own risk, not only over Wabash tracks but also over the tracks of any agency or instrumentality of Wabash. The language of the pass is broad. It contains an unrestricted assumption of *all* risk of injury whether due to negligence or otherwise, coupled with an express agreement that the user of the pass shall have no right or claim arising out of any such injury against the issuing company, Wabash, its servants *or agents,* or any railway on whose lines or trains the pass may be honored, or *its* servants or agents."

The Brown decision, supra, reviewed the law relating to Terminal Companies, such as respondent, and held, "* * * Terminal was an 'agent' of the issuing carrier within the meaning of the language of the pass", citing numerous decisions. Thus, Terminal is the agent of the proprietary lines in taking a passenger and her luggage to and from trains of proprietary lines using Terminal facilities. See, Treadway v. Terminal R. R. Ass'n of St. Louis, 231 Mo.App. 1028, 84 S.W.2d 143, 146.

With these principles in mind we approach the precise contention of appellant, namely, that the mentioned provisions of the railroad passes should not be construed

to include exemption from liability for negligence resulting from paid for redcap service, and constitute no defense.

Both appellant and respondent report their research has not located any decision concerning the applicability of free pass covenants not to sue for injury occasioned by the negligent act of a redcap employed by the injured person to assist him with his baggage. In an excellent brief appellant's counsel have illuminated her basic contention by emphasizing that Mrs. Mc-Kaig's case against Terminal is not based upon Terminal's negligence in providing facilities or services which were furnished plaintiff as a part of her free transportation; not based on negligence of Terminal in allowing the baggage trucks to obstruct the platform under circumstances of insufficient lighting; but rather upon the active negligence of a redcap *hired* by Mrs. McKaig by separate contract, and upon whom she relied in directing her step by step to the point of casualty. Her counsel contends this contract of employment between her and the redcap for a valuable consideration is outside of and apart from the services the Union Pacific and the Wabash had agreed to provide through the issuance of the free passes. They further argue that in entering into this agreement Terminal was not honoring a pass issued by Wabash and was not acting as an agent of the Union Pacific, but was acting in its own behalf. They conclude that an assumption of risk provision is intended to provide immunity from liability in the performance of the thing agreed to be done and is not intended to relieve from liability for negligent performance of a service not agreed to be done. They also assert that since a contract purporting to exempt a common carrier of liability for negligence is void as to passengers who have paid for their passage, if this pass is construed to include the redcap service it would be void as against public policy as an attempted immunity from liability in the rendition of this service for compensation. We will examine each of these contentions.

■ The general rule, early announced in Grand Trunk Railway Company of Canada v. Stevens, 95 U.S. 655, 24 L.Ed. 535, is that a contract undertaking to exempt a common carrier of passengers from liability for negligence is void. The general rule is placed on broad grounds of public policy, justifying restriction of liberty of contract because of the public needs to be achieved. The need to secure the utmost care in the rendering of a service of the highest importance to the community by the common carrier was deemed paramount. This concept was not made applicable to gratuitous passengers where negligence as opposed to wanton or willful acts is concerned.[1] Martin v. Greyhound Corporation, 6 Cir., 227 F.2d 501; New York Central R. Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502. As expressed in Kansas City Southern Ry. Co. v. Van Zant, 260 U.S. 459, 43 S.Ct. 176, 177, 67 L.Ed. 348, the accepted federal rule is " * * * a passenger who accepts a free pass may exempt a carrier from

1. In Northern Pacific R. Co. v. Adams, 192 U.S. 440, 24 S.Ct. 408, 411, 48 L. Ed. 513, the United States Supreme Court explained: "The railway company was not, as to Adams, a carrier for hire. It waived its right as a common carrier to exact compensation. It offered him the privilege of riding in its coaches without charge if he would assume the risks of negligence. He was not in the power of the company and obliged to accept its terms. They stood on equal footing. If he had desired to hold it to its common-law obligations to him as a passenger, he could have paid his fare and compelled the company to receive and carry him. He freely and voluntarily chose to accept the privilege offered; and, having accepted that privilege, cannot repudiate the conditions." In Alexander v. St. Louis-San Francisco Ry. Co., 221 Mo.App. 271, 2 S.W.2d 165, 167, it is said, "It is hardly reasonable that, beside the gift of free transportation, the carrier should be held responsible for these, when he has made it the condition of his gift that he should not be."

responsibility for negligence, and no public policy is violated thereby."

Through a series of acts, congress has pre-empted this field of free passes involving interstate transportation, to whom and under what conditions they may be issued and the limitations and conditions upon their use. See, Francis v. Southern Pac. Co., 333 U.S. 445, 468, 68 S.Ct. 611, 92 L.Ed. 798; Braughton v. United Air Lines, Inc., D.C., 189 F.Supp. 137, 141.

The Missouri decisions and those of sister states follow the federal rule that a common carrier such as those involved here may validly stipulate against liability for negligence with persons who use a free pass.[2] In Dunn v. Alton R. Co., Mo.App., 88 S.W.2d 224, 230, it was expressed, "It is now no longer open to question but that the entire subject of free interstate transportation has been taken over by Congress to the exclusion of all state laws and policies, and that the stipulation in a free interstate pass releasing the carrier from liability, being a part of the pass itself, is valid and enforceable."

But, says appellant, even if the provisions in her Wabash and Union Pacific passes are valid they do not apply to her situation. There can be no doubt but that as ruled in the Brown case, supra, Terminal is an agent of Wabash and Union Pacific and as such is generally entitled to the protection of the pass provisions if they otherwise apply. We are convinced that the facilities, services and activities of Terminal, including the redcap service rendered, are an integral part of the interstate transportation involved in Mrs. McKaig's journey. We note that Congress has treated terminals, such as this one, and its redcaps as being a part of the inter-

state transportation system rather than as any separate, local facility or service. Harrison v. Kansas City Terminal Ry. Co., D.C., 36 F.Supp. 434[3]; Lunsford v. Cleveland Union Terminals Co., 170 Ohio St. 349, 165 N.E.2d 3, 8.

■ Did the contract Mrs. McKaig made with Terminal's redcap to pay him 15¢ to carry her luggage and usher her convert her free pass into one for a consideration? The answer is "no". It would no more do so than would her paying for her meals on the train diner or her paying for any special service in connection with her otherwise free transportation. In Stevens v. Colombian Mail S. S. Corporation, D.C., 15 F.Supp. 534, 535; in discussing the effect of such extras the federal court said, "As the pass shows on its face, the holder was entitled to free transportation, but was charged for meals and berth. In other words, she was a free passenger, but not a free boarder or roomer. In such a case the conditions attached to the pass are valid and control all rights incidental to passage."

Did the fact that Mrs. McKaig was not aboard any train but was only approaching the Wabash train as she was injured place her outside of the terms of both passes. Again the answer is no. The terms of the passes are applicable to *"the user"*. Several decisions support our ruling that she need not be on either train to be a "user" as that term appears in both passes.

In Ketchum v. Denver & Rio Grande Western R. Co., 10 Cir., 175 F.2d 69, 70, the free pass provided, "The user assumes all risk of injury to person * * *." Plaintiff entered the station premises to travel on the train. While proceeding

---

**2.** See, Kansas City Southern R. Co. v. Van Zant, 260 U.S. 459, 43 S.Ct. 176, 67 L.Ed. 348; Pinnell v. St. Louis-San Francisco Ry. Co., Mo., 263 S.W. 182, 41 A.L.R. 1092; Alexander v. St. Louis-San Francisco Ry. Co., 221 Mo.App. 271, 2 S.W.2d 165; Boering v. Chesapeake Beach Ry. Co., 193 U.S. 442, 24 S.Ct. 515, 48 L.Ed. 742.

**3.** Loc. cit 436: "The various duties (of redcaps) intimately are connected with the obligation of the Terminal Company and the railroads holding stock in it to the travelling public."

along the walkway from the station to the train for the purpose of boarding it, she suffered an accident. On these facts the court in denying recovery ruled, "The relation of carrier and passenger arises, and the duty of the carrier to the passenger attaches, when the latter enters the station premises for the purpose of boarding a train of the carrier. Such relationship precedes the actual boarding of the train and comes into being when a person, with the consent of the carrier, express or implied, enters the appropriate premises of the Railroad Company with the bona fide intent to avail himself of the transportation facilities which the carrier offers. It follows that the relationship of carrier and passenger existed at the time the accident occurred."

In Wilder v. Pennsylvania R. Co., 245 N.Y. 36, 156 N.E. 88, 52 A.L.R. 188, the "Pennsylvania System" pass read, "In consideration of the issuance of this free pass, I hereby assume all risks of personal injuries * * *." Plaintiff fell on the soapy and slippery floor of the waiting room of the station owned by the Terminal. She was at the station for the purpose of boarding a train to Norfolk, Va., and was to ride on a pass issued by the Pennsylvania Railroad Company. The New York Court ruled against her claim for personal injuries saying, 156 N.E. loc. cit. 89: "The station and the waiting room were part of the connecting railroad which the plaintiff could use free of charge by reason of her agreement with the Pennsylvania Railroad Company. * * * While using this pass, therefore, she assumed all risks of personal injury."

In Lunsford v. Cleveland Union Terminals Co., supra, plaintiff was injured by the negligence of the Terminal Company in operating an escalator. She had alighted from the New York Central train and was riding the escalator from the track level to the terminal concourse. The pass she had used for her train transportation read, "In consideration of receiving this free pass, each of the persons * * *

using the same * * * agrees that the company shall not be liable * * *." Citing with approval, Brown v. Terminal R. Ass'n, supra, the Ohio Supreme Court ruled the pass provisions applied to her accident and injuries.

■ In view of the foregoing cases and their principles, which we believe are sound, we rule that Mrs. McKaig at the time of her injury was a user of the Wabash pass, and the fact she was injured while not on a train is not controlling on the question of the applicability of the pass provisions of either pass.

We realize, without so ruling, that as to the Union Pacific Railroad she may have reached that place in her journey where she was no longer "the user" of that pass, although in contemplation of her continuous journey from Denver to Indianapolis she knew that at Kansas City she would need the aid of a redcap to assist her from the Union Pacific train to her next train, the Wabash. We do not pursue that subject further in view of our holding that she was a user of the Wabash pass at the time of her injury, and our rulings as to the interpretation and effect of the terms of the Wabash pass. Cf. Annotation, 147 A.L.R. 778.

Appellant relies principally upon her contention that the provisions of the passes ought not to be construed to apply to her, and if they are so construed they become void as against public policy. What we have already said in the main refutes these contentions.

■ Looking for the moment only to the provisions of the Wabash pass, as to which we have ruled she was a user at the time of her injury, we find they are expressed in very broad language which when given its usual and ordinary meaning encompasses "all risk" of injury, even that, as we view it, inflicted by the negligence of the redcap employee of Terminal, for the language specifically covers a "right or claim against the issuing com-

pany (Wabash), its servants or agents, or any company or railway on whose lines or trains this pass may be honored, or its servants or agents * * *." We hold that respondent Terminal is such a company contemplated by the pass terms, and that by covering "all risk" no exception is made of that resulting from optional, incidental or extra services such as those of the redcap even though they may be paid for services. The language used in the pass is not ambiguous, and we must give it its clear meaning.

■ Nor have we in our study of the federal decisions and those of our state and our sister states found any that would lead us to conclude that a charge, such as that here, for the optional, extra service of the redcap is of such import or effect as to change the pass transactions from one of free transportation to one of transportation for a consideration so as to make invalid the pass terms concerning the nonliability of the carrier or its agents for negligence to the user because allegedly against public policy. On the contrary, it is the general tenor of those cases that a charge may be made for an extra somewhat incidental service or item without invalidating the free pass provisions regarding nonliability for negligence to a user of the pass. If this were not so then such things as injury resulting from negligence by a dining car waiter to a free pass passenger who had ordered his meal on the train, or negligent injury to a free pass passenger by the train porter who for a small fee was performing some incidental extra service for the passenger would logically have to be deemed compensable in spite of the pass user's covenant to the contrary because of the small payment for the incidental extra service invalidated the pass provision. Such a ruling appears unsound, and not supported by any logical consideration of public policy as that term is generally understood and applied. See, Stevens v. Colombian Mail S. S. Corporation, supra; Braughton v. United Air Lines, Inc., D.C., 189 F.Supp. 137, 140;

Ulrich v. New York Central & H. R. R. Co., 108 N.Y. 80, 15 N.E. 60; 12 Am.Jur., Contracts, sections 169 and 172, page 666 ff.; 17 C.J.S. Contracts § 211(d), page 568. Rather, we hold that there is no public policy which prevents the described redcap service undertaken by respondent from being included in the questioned language of the Wabash pass, and that the language of that pass when given its usual and ordinary meaning obviously covers such service of respondent.

It follows that the trial court did not err in sustaining Terminal's mentioned motion, in setting aside the verdict and judgment, and in entering judgment for defendant-respondent. The judgment is affirmed.

All concur.