## KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* VAN ZANT.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 142. Argued December 4, 1922.—Decided January 2, 1923.

1. By forbidding common carriers engaged in interstate commerce to issue free passes for interstate journeys, except to specified classes of persons, (Hepburn Act, 1906,) Congress took over the

subject to the exclusion of state laws, not only as to what passes may be issued and used, but also as to their limitations, conditions and effect upon the rights and responsibilities of the passenger and railway company, respectively.  P. 468.

2. A condition affixed to a free pass, issued under the Hepburn Act, that the person accepting and using it assumes all the risk of accident and personal injury, is valid.  P. 468.

289 Mo. 163, reversed.

CERTIORARI to review a judgment of the Supreme Court of Missouri, affirming a judgment recovered by the respondent from the Railway Company in an action for personal injuries suffered by her, in that State, while she was traveling from Kansas to Oklahoma by means of a free pass, which had been issued to her as the mother of one of the company's employees.

*Mr. Samuel W. Moore*, with whom *Mr. Frank H. Moore* and *Mr. Cyrus Crane* were on the brief, for petitioner.

The original Act to Regulate Commerce, passed in 1887, did not expressly prohibit free transportation, and it was only when such transportation constituted discrimination and was not in the exception contained in § 22 of the act that it was illegal.  The first general prohibition of free transportation, and the first express authorization of free transportation, except in certain specified instances permitted by § 22, appeared in the amendment of 1906.  In the Act of April 13, 1908, a proviso was added expanding the meaning of the word "employees."  In the amendment of June 18, 1910, which is not involved herein, a further proviso was added making provision for the exchange of passes or franks with telegraph, telephone and cable lines.

The evident purpose of Congress, in its amendment of 1906, was to bring the whole subject of interstate transportation under direct national control.  The issue of free transportation, unregulated except by the general

anti-discrimination provisions of the Act of 1887, and by the several States whose efforts to enforce their statutes were not attended with great success, had resulted in gross discrimination. National legislation of a comprehensive character, therefore, was imperatively necessary to provide one uniform rule covering the subject of free transportation, and one uniform method of its enforcement. The amendment of 1906 was responsive to this demand.

. Congress, we contend, reached out and took over the entire subject of free interstate transportation, specifying with particularity the persons to whom it might lawfully be issued and providing penalties for infractions of the law by individuals as well as the carriers. This of necessity deprived the States of all power or authority to legislate with respect to such transportation. The exertion of national power would be frustrated and nullified if authority remained in the several States to encroach upon or in any manner to affect the subject-matter with conflicting statutes or decisions.

The stipulation in a free interstate pass releasing the carrier from liability is a part of the pass itself. The pass is a license, and the person to whom it is issued is a licensee. *Northern Pacific Ry. Co.* v. *Adams*, 192 U. S. 440, 454. The terms and conditions on which it is issued and given validity are an integral part of the license itself. A release of all claims for personal injuries has always been a condition to the use of free transportation. Such a stipulation was upheld in 1858. *Welles* v. *Railway Co.*, 26 Barb. 641; affd. 24 N. Y. 181.

The fact that the release was on the back of the pass instead of on its face is of no consequence. The pass consisted of writing and printing on both sides of the paper. This was the pass over which Congress assumed jurisdiction by the amendment of 1906. That part of the pass which consists of the release, equally with that

part which authorized the plaintiff to travel free was thus withdrawn from the domain of state legislation.

Congress is presumed to have enacted the amendment of 1906 with full knowledge of the decisions of this Court in *Northern Pacific Ry. Co.* v. *Adams, supra;* and *Boering* v. *Chesapeake Beach Ry. Co.*, 193 U. S. 442. It knew that the usual release stipulation was an integral part of the pass itself, and that the use of a free pass involved a waiver on the part of the carrier of its compensation, and likewise a waiver on the part of the user of the pass of any claim for damage to his person. It may also be assumed that Congress knew of the conflicting state statutes, some of which gave and others denied compensation.

The validity of a stipulation against liability contained in a free interstate pass issued by a railway company under the Act of 1906 came before this Court in *Charleston & Western Carolina Ry. Co.* v. *Thompson*, 234 U. S. 576.

A pass is ordinarily conditioned to be non-transferable and subject to forfeiture if presented for passage by any other than the person to whom it was issued. Is the validity of these provisions to be tested by state statutes and decisions of state courts? Passes also contain a time limit, during which they are valid for passage. Is this likewise subject to state regulation? Following the passage of the Act of 1906, the Interstate Commerce Commission promulgated various rulings relative to the issue of free interstate transportation, prescribing its form, designating the persons who come within its provisions, defining the word " family " as used in the act, etc. I Watkins, Shippers and Carriers, 3d ed., pp. 648–652. May these rulings and regulations be amended or repealed or superseded by state authority? Many other illustrations might be given.

The confusion that would result is aptly illustrated by the confusion which actually existed in the enforcement

of a carrier's liability for loss or damage to freight shipments prior to the amendment of 1906. *Adams Express Co.* v. *Croninger,* 226 U. S. 491.

The Act of 1906, providing for the issue of free interstate transportation, is silent on the subject of the liability of the pass-holder for personal injuries; but this is no answer to our contention that the federal authority has taken over the entire subject of free interstate transportation, including the stipulations upon which it may be issued, and their validity. *Postal Telegraph Co.* v. *Warren-Godwin Lumber Co.,* 251 U. S. 27; *Western Union Telegraph Co.* v. *Boegli,* 251 U. S. 315.

Similarly, it has been held by this Court that the Federal Employers' Liability Act has occupied the entire field with respect to the liability of carriers for damages to employees, to the exclusion of state control. *New Orleans & Northeastern R. R. Co.* v. *Harris,* 247 U. S. 367; *New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147; *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492; *Pryor* v. *Williams,* 254 U. S. 43.

The same argument that is made by the respondent here might be urged in support of the proposition that as the statute was silent touching the transferability of mileage, excursion or commutation passenger tickets, that subject was not taken over by Congress, but remained subject to state regulation. But this Court, in *Bitterman* v. *Louisville & Nashville R. R. Co.,* 207 U. S. 205, decided otherwise.

The stipulation against liability contained in the pass was a contract entered into pursuant to federal authority. The Hepburn Act permitted carriers to issue free interstate transportation to employees and their dependents, and, by necessary implication, to issue such transportation on the usual and customary conditions. In authorizing the issuance of a free pass, Congress likewise authorized this inseparable incident to all free transporta-

tion. The parties to such a contract authorized by an act of Congress are entitled to have its validity determined and its terms construed in accordance with the rules which obtain in the federal courts to the exclusion of the rules which obtain in state courts. *Tullock* v. *Mulvane,* 184 U. S. 497; *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin,* 241 U. S. 319; *Missouri, Kansas & Texas Ry. Co.* v. *Harriman,* 227 U. S. 657.

*Mr. Charles H. Montgomery,* for respondent, submitted.

Federal legislation as to carriage of a person on an admittedly free pass has not occupied the field of liability for negligent injury to such person even on an interstate journey. No attempt has been made to regulate or control this liability, and no mention made of it. The same is true as to a contract designed to exempt the carrier from liability. Until Congress does act affirmatively on these subjects, the state courts are free to apply their local laws, even though, in so doing, they may indirectly affect interstate commerce contracts of carriage. Hepburn Act, § 1, c. 3591, 34 Stat. 584; *Chicago, Rock Island & Pacific Ry. Co.* v. *Maucher,* 248 U. S. 359; *Savage* v. *Jones,* 225 U. S. 501; *Pennsylvania R. R. Co.* v. *Hughes,* 191 U. S. 477; *Southern Pacific Co.* v. *Schuyler,* 227 U. S. 601; *Clark* v. *Southern Ry. Co.,* 69 Ind. App. 697; *Weir* v. *Roundtree,* 173 Fed. 779; *Smith* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 194 Fed. 81; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Wiley* v. *Grand Trunk Ry. Co.,* 227 Fed. 129; *Fowler* v. *Railroad Co.,* 229 Fed. 375; *Minnesota Rate Cases,* 230 U. S. 352.

In passing on the question of liability of the carrier for negligent injury to a person riding on a free pass, and the question of the validity of a contract exempting the carrier from such liability, a federal court does not determine those questions by reason of any provision of the Hep-

burn Act, but by its own interpretation of the common law. *Southern Pacific Co.* v. *Schuyler, supra; Weir* v. *Roundtree, supra; Smith* v. *Atchison, Topeka & Santa Fe Ry. Co., supra; Martin* v. *Pittsburg & Lake Erie R. R. Co.,* 203 U. S. 284.

Where the stipulation on the pass is void under the local law where the injury occurred and where the case is tried in the state court, the state law will be enforced by this Court on review from the state court. It is only where the case is tried originally in a federal court, or brought there for trial by the process of removal, that the federal court will apply its own interpretation of the common law. Williams, Juris. & Pr. in Fed. Cts., p. 193, par. 4; *Southern Pacific Co.* v. *Schuyler, supra; Weir* v. *Roundtree, supra; Smith* v. *Atchison, Topeka & Santa Fe Ry. Co., supra; Fowler* v. *Railroad Co., supra; Tweeten* v. *Railroad Co.,* 210 Fed. 830; *Charleston & Western Carolina Ry. Co.* v. *Thompson,* 234 U. S. 576.

Authorities cited by defendant fall under the class of cases tried in a federal court, or arise either under the federal enactments with regard to the carriage of interstate telegrams or express, or under federal enactments with regard to employers' liability, in both of which cases Congress has dealt at length and has occupied the entire field of liability of the carrier, including the subjects of the action and defenses.

The stipulation on the back of the free pass in the instant case does not cover the matter of a negligent injury to the person of the passenger riding on the pass, and there is no contract in this case purporting to exempt the carrier from liability for such negligent injury. The case may be sustained independently of a federal question, and, for that reason also, the holding of the state court should not be disturbed. *Northern Pacific Ry. Co.* v. *Adams,* 192 U. S. 440; *Charleston & Western Carolina Ry. Co.* v. *Thompson, supra; Boering* v. *Chesapeake*

*Beach Ry. Co.,* 193. U. S. 442; *Southern Pacific Co.* v. *Schuyler, supra.*

MR. JUSTICE MCKENNA delivered the opinion of the Court.

The case presents the effect of a condition in a free pass issued by petitioner to respondent and used by her in transportation in interstate commerce—whether determined by the provisions of § 1 of the Hepburn Act (34 Stat. 584) or by the laws of Kansas and Missouri.

There is practically no dispute about the facts. The pass was authoritatively and gratuitously issued and she sustained injuries in Missouri while using it in an interstate journey. This injury she alleged, and prayed judgment against the Railway Company in the sum of $25,000.

The. Railway Company opposed the pass to the action. It contained the following condition: " The person accepting and using it, thereby assumes all risk of accident and damage to person and baggage."

The company averred that it was an interstate carrier by rail and issued the pass " under Art. 5 [1] of the Federal Law, known as the Interstate Commerce Act," and it was to be " interpreted and controlled in its effect and operation by decisions of the Federal Courts " construing the act.

To the defense respondent replied that at the time of receiving the pass she resided in Kansas, and that in accepting it " she did not and could not assume the risk of accident or damage to her person and baggage, caused by the negligence " of the company, and that the condition upon the pass expressing such effect was void under the provisions of Art. 3, c. 98, of the General Statutes of

---

[1] This reference is evidently to a subdivision of § 8563 of the publication known as " U. S. Compiled Statutes, 1916."—Reporter.

the State of Kansas, 1915, relating to railroads and other carriers, and that, under the statutes and the common law of Kansas, the condition was against public policy.

She further pleaded that under the laws of Missouri the condition was also against public policy and void, and that the action was not, and is not, brought " upon any Federal Statute or any Federal law, but upon the common law liability in force " in Missouri and that " the action was and is brought in the Circuit Court of Jasper County, Missouri, under the laws of the State of Missouri," and that the company's liability to her was to be determined by the laws of that State.

The trial court took and expressed the view that the condition upon the pass was void under the laws and public policy of both States, and ruled that the condition upon it constituted no defense to the action and excluded it from the case. Declarations of law recognizing the relevancy and controlling effect of the condition were refused.

The court thereupon found for respondent (plaintiff) and fixed her damages at $8,000—that amount having been stipulated as representing her injury. Judgment was entered for that amount, and was affirmed by the Supreme Court of the State.

The Supreme Court discussed at some length the Hepburn Act, the extent of its regulation, and what it permitted to state powers or excluded from them, and said, adopting the language of a Supreme Court Commissioner of the State, " Our own conclusion is that Congress has not legislated on the subject of the rights and liabilities of the parties in cases of interstate carriage of passengers under free passes, not coming within the prohibition of the Hepburn Act, or respecting the validity of stipulations or conditions annexed to such passes exempting the carrier from liability and that, therefore, these matters remain the subject of regulation by the several States."

The comment concedes the supremacy of federal control, and leaves only the inquiry, Has control been exerted in the Hepburn Act?

The act was passed June 29, 1906, and was an amendment to the Interstate Commerce Act of 1887. It was, as the act it amended was, a regulation of carriers in interstate commerce, and it provided that " no common carrier subject to the provisions of this act shall, after January first, nineteen hundred and seven, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees and their families. . . ." And a carrier violating the act is subject to a penalty, and any person not of those excepted, who uses the pass, is also subject to a penalty.

The provision for passes, with its sanction in penalties, is a regulation of interstate commerce to the completion of which the determination of the effect of the passes is necessary. We think, therefore, free passes in their entirety are taken charge of, not only their permission and use, but the limitations and conditions upon their use. Or to put it another way, and to specialize, the relation of their users to the railroad which issued them, the fact and measure of responsibility the railroad incurs by their issue, and the extent of the right the person to whom issued acquires, are taken charge of. And that responsibility and those rights, this Court has decided, the railroad company can control by conditions in the passes. Antecedently to the passage of the Hepburn Act, we decided that a passenger who accepts a free pass may exempt a carrier from responsibility for negligence, and no public policy is violated thereby. *Northern Pacific Ry. Co.* v. *Adams,* 192 U. S. 440; *Boering* v. *Chesapeake Beach Ry. Co.,* 193 U. S. 442.

Those cases were considered and applied as giving validity to the stipulations of passes issued under the act

in *Charleston & Western Carolina Ry. Co.* v. *Thompson,*
234 U. S. 576, according thereby freedom of transporta-
tion to the possessor of a pass, and giving assurance to
the railroad company that its gratuity will not be given
the consequences of compensated right and its incident
obligations, and be a means of exacting from the com-
pany indefinite damages. In this case the prayer was
for $25,000—the recovery was for $8,000. Circumstances
might have made it the larger sum—and this, it is the
contention and decision, is the determination of state
laws which could neither permit nor forbid the gift. We
cannot assent. The pass proceeded from the federal
act; it is controlled necessarily in its incidents and con-
sequences by the federal act to the exclusion of state
laws and state policies, and such is the effect of the cited
cases.

> *Judgment reversed and cause remanded for fur-
> ther proceedings not inconsistent with this opinion.*