**G. C. MARTIN, Appellant,**

v.

**The GREYHOUND CORPORATION,**
Appellee.

No. 12395.

United States Court of Appeals
Sixth Circuit.

Dec. 2, 1955.

Kenneth Harwell, Nashville, Tenn. (Williams, Harwell, Howser & Thomas, Nashville, Tenn., on the brief), for appellant.

K. Harlan Dodson, Jr., Nashville, Tenn. (Walker, Hooker, Keeble, Dodson, & Harris, Nashville, Tenn., on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SIMONS, Chief Judge.

Frustrated in his effort to submit his claim for damages to the court upon its merits, by a summary judgment in favor of the appellee, D.C., 125 F.Supp. 362, the appellant presents this appeal. The facts upon which he relies follow.

The appellant is, and since 1948 has been, an employee of the Southeastern Greyhound Lines, a division of the Greyhound Corporation. The appellee is a corporation, incorporated under the laws of Delaware, and doing business in Tennessee as a common carrier of passengers. The appellant at the time here involved was a member of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America which had entered into an employment contract with the appellee by terms of which he was entitled to have issued to him and his family passes entitling them to passage on the bus system of the appellee. Pursuant to the terms of his employment contract, he requested, and was issued, passes entitling him and his wife to passage from Nashville, Tennessee to Jacksonville, Florida and return. On the morning of September 22, 1952, the appellant and his wife boarded one of the appellee's busses in Nashville, en route to Florida. He alleges that upon reaching a point within the state of

Alabama, north of Birmingham, and while the bus was being driven at an unreasonable rate of speed and in a reckless and careless manner, with a defective front tire, the tire blew out and the bus rolled down an embankment, causing Mrs. Martin to suffer injuries which, eventually caused her death. He charges that the accident resulted from the reckless speed of the bus at a time when the appellee knew, or should have known, the right front tire was defective. He charges explicitly that the appellee's want of care raises "the presumption of conscious indifference to consequences and guilty of gross and wanton negligence." The presumption arises from the rate of speed and from the fact that the appellee had replaced the safety, puncture proof tires on the bus by tires which were likely to puncture and blow out, under certain atmospheric conditions.

The appellee denied all charges of negligence and, as affirmative defenses, pointed to the terms of the passes which recited that the person named therein voluntarily assumed all risk of accident, waived liability, and represented that he would not use the pass in violation of any law. The appellee further answers that it had a contract with the Goodyear Tire & Rubber Company under the terms of which that company, as an independent contractor, agreed to furnish tires for its busses and to care for them. If any tire was defective, it was due to the negligence of Goodyear and not its own and that by selecting Goodyear to furnish and maintain its tires in serviceable condition it was exercising the highest degree of care for its passengers.

The district court [125 F.Supp. 363] adjudged that the appellant's wife did not occupy the status of a " 'passenger for hire' ", that her pass though issued pursuant to a labor contract, was a gratuity and that appellant and his wife were bound by the stipulations limiting the liability of Greyhound. It, thereupon, entered a judgment dismissing the complaint. The general rule stemming from Grand Trunk Railway Company v. Stevens, 95 U.S. 655, 24 L.Ed. 535, is that a contract undertaking to exempt a common carrier of passengers from liability for negligence is void. The reasons underlying it are fully set forth by Mr. Justice Hughes in Santa Fe P. & P. R. Co. v. Grant Brothers Construction Co., 228 U.S. 177, at pages 184, 185, 33 S.Ct. 474, 57 L.Ed. 787. There, it was said that the rule rests on broad grounds of public policy, justifying restriction of liberty of contract because of the public needs to be achieved. The law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. This concept is not, however, applicable in its full sweep to gratuitous passengers since it was held in Northern Pacific Railroad Company v. Adams, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513, that a carrier could stipulate with a gratuitous passenger against liability for ordinary negligence. Although the decisions are not in complete agreement, it is, generally, held that a carrier cannot by such stipulations relieve itself from liability for acts done wantonly or wilfully, or for acts of gross negligence, New York Central Railway Co. v. Mohney, 252 U.S. 152, 40 S.Ct. 287, 64 L.Ed. 502.

This brings us to the principal issue in the case and, so, to a consideration as to whether the appellant and his wife were "passengers for hire" or whether the passes constituted "gratuities." The appellee leans heavily upon Charleston & Western Carolina R. Co. v. Thompson, 234 U.S. 576, 34 S.Ct. 964, 965, 58 L.Ed. 1476. But there, Mr. Justice Holmes pointed out that the railroad was under no obligation to issue the pass. The appellee was under such an obligation. The union agreement with Greyhound provided that its members were entitled to receive trip passes for themselves and their families for such trips as seemed reasonable to the company. The fact that the passes were issued eliminates any question as to their reasonableness. The obligation of the appellee was fixed

by its union contract. The passes were in a real sense part of the compensation paid to appellant as member of the union.

The appellee relies upon § 1, par. (7) and § 317(b) of the Hepburn Act, Interstate Commerce Act, Tit. 49 U.S.C.A. The first prohibits, with numerous exceptions, the free transportation of passengers by common carriers. Within such exceptions, as recipients of passes, are the carriers' employees and their families. The second provides that no common carrier by motor vehicle shall charge, demand, collect or receive a greater or less, or different, compensation for transportation than is provided in its published tariffs in effect at the time. Charleston & Western Carolina R. Co. v. Thompson, supra, held that a pass issued to a member of the family of an employee of a railroad company is *free* under the provision of the Hepburn Act permitting it to be issued and, in consequence, a stipulation contained in it, exempting the company from liability in case of injury, is valid. The main question in that case was, therefore, said to be "whether, when the statute permits the issue of a 'free pass' to its employees and their families, it means what it says." As the pass was free under the statute, there is no question of the validity of its stipulation. That case must, however, be considered in the light of its specific facts, the court's rationalization in respect to them, and whether in actuality, as in name, the pass is *free*.

Norfolk Southern Railroad Company v. Chatman, 244 U.S. 276, 37 S.Ct. 499, 61 L.Ed. 1131, demonstrates that the mere designation of a pass as *free* does not constitute it a gratuity and, so, in the case of livestock contracts, providing for the transportation of caretakers on free passes, such passes were held not to be *gratuities* issued without consideration. Similar was our own holding in Tripp v. Michigan Central Railroad Company, 6 Cir., 238 F. 449. The Supreme Court in Chatman distinguished from the Thompson case because behind the pass there involved lay no such background of court decision and railroad practice, giving definite interpretation to the statute, in respect to caretaker passes. The teaching of Chatman is that the designation of a pass as *free* does not, of itself, make it a *gratuity*.

We have behind the passes issued in our case no such background of court decision and practice as was reviewed in Chatman, neither do we have here any "improbable speculation that the possibility of getting an occasional free pass entered into the motives of the employee", as rationalized in Thompson. Here is a specific written contract between the employer and employee, supported by a recognizable consideration, which dispels all possible speculation and denies the character of the pass as a *gratuity*. Moreover, the problem, as here presented, arises in an era of social, economic, and legal change which has mitigated harsh technical defenses to suits for recovery for negligent injury, has given new values to employee benefits, and new sanctions to their denial. Like all other so-called "fringe benefits," including hours and conditions of work, social security, paid vacations, hospitalization, etc., the issue of passes is also subject to collective bargaining, and, like other benefits, is a thing of value, subject, no doubt, to the revenue laws when received. There should be no difficulty in equating the value of the pass to the published tariff, in compliance with § 317(b) of the Interstate Commerce Act. Such climate should and has conditioned interpretation when interpretation is reasonably indicated to effectuate the Congressional purpose.

We are not here concerned with Alabama law. The free pass provisions of the Hepburn Act constitute a regulation of interstate commerce. The Greyhound was a common carrier in interstate commerce and the passes were granted for an interstate trip. The issue as to whether the appellant and his wife were "passengers for hire" is to be resolved by federal and not by state law. It is not of any importance that the appellant's wife was not an employee of

Greyhound if the passes were not gratuitous.

▆ We think the summary judgment should be set aside also on another ground. The allegations of the complaint are sufficiently specific to present an issue of willful, wanton, or gross negligence. If our view of the law is sound to the end that a carrier may not relieve himself from liability for such fault by stipulations, waiving liability, an issue of fact was presented which should be tried.

Reversed and remanded to the district court for trial of the case upon its merits.