Nida D. SCHILLER and Carl Schiller,
Plaintiffs,

v.

PENNSYLVANIA RAILROAD COM-
PANY, Defendant.

United States District Court
S. D. New York.
March 6, 1961.

Richard C. Machcinski, New York City, for plaintiffs.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendant. David J. Mountan, Jr., New York City, of counsel.

PALMIERI, District Judge.

This case was tried to a jury which was required to return a verdict in the form of answers to special questions propounded by the court. See Fed.R.Civ.P. 49(a), 28 U.S.C.A. The issues framed by the court and the findings of the jury thereon are attached hereto in the form of an appendix. Just compensation for the pain and suffering of the plaintiff Nida D. Schiller was determined by the jury to be $9,000. The jury also found that $9,669.01 represented the amount which would compensate Carl Schiller, the co-plaintiff, for medical and household expenses incurred for his wife's benefit. Judgment was entered in favor of the plaintiffs for these amounts and the defendant has moved to set aside the judgment on the ground that it cannot stand as a matter of law. The defendant made appropriate motions throughout the trial for the purpose of safeguarding its position in the case and decisions were uniformly reserved: Motions were made to direct a verdict for the defendant, to dismiss the plaintiffs' case at the close of the plaintiffs' evidence and at the close of the entire evidence, and to set aside the judgment for the plaintiffs. See Rules 41(b), 50, Fed.R. Civ.P.

### The Accident Risk Conditions of Plaintiffs' Passes

The action was one for damages arising from personal injuries suffered by the plaintiff Nida D. Schiller as the result of a fall on a public stairway at the defendant's Pennsylvania Station, New York City. The plaintiff Carl Schiller

is a former railroad employee retired from defendant's service after more than 25 years' employment. Because of this former relationship, both Mr. and Mrs. Schiller were in possession of passes entitling them to gratuitous first-class transportation. On the day of the accident, the Schillers intended to use their passes to obtain transportation to Chicago. They were also in possession of reservations for Pullman accommodations which they had obtained at their own expense. Except for the Pullman accommodations charge, their travel to Chicago was to cost them nothing.

The passes contain provisions absolving the railroad from liability in case of accident. The following conditions appear on the backs of the passes:

"Conditions

"This pass is not transferrable. If presented by a person not named therein, Conductor will take up the pass, and collect the proper fare. The user expressly assumes all risk of accidents, and of personal injury, and loss or damage to property, regardless of their causes, and absolves the Company from all liability therefor. As a condition to its issue, it is declared by the user that such user is not prohibited by law from receiving free transportation, and further that the pass will be lawfully used."

At the very threshold of the action, therefore, the question was presented as to whether or not these provisions effectively barred the plaintiffs' suit. Before trial I sought to obtain counsel's stipulation with respect to the facts bearing upon this preliminary legal issue. Since counsel were unable to agree upon the relevant particulars and it appeared that the trial would be of short duration, I directed that the case be presented to the jury and reserved for post-trial determination the question posed by the pass conditions. I also advised counsel that the jury would be asked to make special findings on the disputed factual particulars relating to the preliminary issue.

### The Issues Presented to the Jury

The plaintiffs arrived at the defendant's Pennsylvania Station in New York City on the evening of November 17, 1956 with the intention of boarding a Chicago train scheduled to depart at 8:15 P.M. Their taxicab brought them down the West 31st Street ramp to the upper level of the terminal. After leaving their baggage in a parcel locker in that area of the station, they crossed to the north side and were descending the wide, stone stairway connecting the upper with the middle or exit level of the station [1] when the plaintiff Nida Schiller fell and sustained serious injury. These basic facts as to the nature of the occurrence were undisputed.

In support of their charge of negligence, plaintiffs made four allegations: (a) the defendant failed to exercise reasonable care to keep the stairway free from moisture; (b) the staircase had no banister or railings on the sides or in the center thereof; (c) the staircase was constructed of smooth marble or stone; and (d) there was improper and inadequate lighting over and near the staircase. Plaintiffs urged that in view of the rainy weather prevailing on the afternoon and evening of November 17, 1956, one or more of these factors rendered the stairway unsafe for public use. The jury based its finding of negligence solely upon (b) and expressly rejected the other alleged breaches of duty as a basis for a finding of a want of due care on the part of the defendant.

When the plaintiffs were descending the stairway in question they were proceeding to a restaurant facility on the middle or exit level for the purpose of purchasing sandwiches to take on the train. The jury so found in answer to specific questions. The jury also found that the plaintiffs had this intention at

---

1. This stairway no longer exists but a number of photographs of it were introduced at trial.

the time they arrived at defendant's station.[2] There was evidence at the trial to the effect that the train which plaintiffs intended to take had no dining car and that a dining car would be attached to it only the next morning. The evidence further indicated that the plaintiffs had had their principal meal of the day some time during the afternoon of November 17th and that they were aware of the fact that the train would have no dining facilities that evening.

 If the pass conditions were applicable, the plaintiffs could recover only upon a showing of gross or wanton negligence on the part of the railroad. Francis v. Southern Pacific Co., 1948, 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798. Concededly, no gross or wanton negligence could be attributed to the defendant. Plaintiffs rested their claims exclusively on the grounds that the pass conditions were inapplicable and that defendant failed to comply with its duty of reasonable care. Neither party took any exception to the standard of care defined by the court to the jury to the effect that defendant was bound to maintain the staircase in question in a condition which was reasonably safe and suitable for public use.[3]

### The Scope of the Pass Provision Absolving Defendant from Liability for Negligence

In Francis v. Southern Pacific Co., 1948, 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798, the Supreme Court had occasion to reexamine its pre-Erie-Tompkins holdings on the liability of an interstate carrier to one riding on a free pass which contained a provision absolving the carrier from liability for negligence. The Court adhered to the ruling which it announced in Kansas City So. Ry. v. Van Zant, 1923, 260 U.S. 459, 43 S.Ct. 176, 178, 67 L.Ed. 348,[4] and held that the Hepburn Act[5] prohibition against the issuance of free passes except to specified classes of persons rendered all "incidents and consequences" of such passes issues of federal law, to be determined by judicial elaboration of the principles of the federal statute.[6] In accordance with precedent found in pre-Erie-Tompkins gratuitous passenger cases, particularly Northern Pacific Ry. Co. v. Adams, 1904, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513,[7]

---

2. See Appendix Question V(b) and (d).

3. The charge of the court to the jury on this point was as follows:
 "A railroad owes to its passengers a duty to furnish safe station facilities and safe means of access to train platforms. This means that with respect to its platforms, halls, stairways, and the like, the railroad is obliged to exercise ordinary and reasonable care in view of the dangers to be apprehended. Ordinary and reasonable care means that degree of caution which a reasonably prudent man would have exercised under the circumstances."
 With respect to station stairways and approaches to cars, the New York cases do not require the carrier to exercise a higher degree of care to passengers than to members of the public invited to come on the premises. See Kelly v. Manhattan Ry., 1889, 112 N.Y. 443, 20 N.E. 383, 3 L.R.A. 74; De Renzis v. New York Rapid Transit Corp., 1st Dept.1939, 256 App.Div. 367, 9 N.Y.S.2d 983. Kramer v. Long Island R. Co., Sup.1940, 19

N.Y.S.2d 894, affirmed without opinion, 2d Dept.1941, 262 App.Div. 869, 29 N.Y.S.2d 716.

4. See also Charleston & W. C. Ry. v. Thompson, 1914, 234 U.S. 576, 34 S.Ct. 964, 58 L.Ed. 1476.

5. 34 Stat. 584 (1906), 49 U.S.C.A. § 1(7); see 34 Va.L.Rev. 604 (1948).

6. Cf. Braughton v. United Air Lines, D.C.W.D.Mo.1960, 189 F.Supp. 137.

7. In this case the Court held that although carrier stipulations avoiding liability for negligence were invalid as to passengers for hire, such stipulations did not contravene public policy and were valid as to free passengers. See also Boering v. Chesapeake Beach Ry. Co., 1904, 193 U.S. 442, 24 S.Ct. 515, 48 L. Ed. 742; New York Central R. Co. v. Lockwood, 1873, 17 Wall. 357, 84 U.S. 357, 21 L.Ed. 627; 53 Harv.L.Rev. 133 (1939).
 Prior to the Francis holding that the federal rule enunciated in the Adams case was controlling to the exclusion of

the Court went on to hold that the free pass rider was bound by the printed conditions of his pass to assume the risk of injury caused by the carrier's negligence. The Court reached this conclusion somewhat reluctantly, observing that it was not "writing on a clean slate." [333 U.S. 445, 68 S.Ct. 613.] It reasoned that the 1940 legislative reenactment of the Hepburn Act's free pass provisions without change or qualification signified congressional approval of the judicial decisions giving effect to carrier stipulations avoiding liability for negligence to persons traveling on free passes.

■ Commentators have criticised the ground of decision in the Francis case, suggesting that there was little justification for the position that congressional silence in 1940 implied congressional approval of the 1904 judicially created rule in Northern Pacific Ry. v. Adams, supra,[8] with respect to the validity of free pass liability avoidance conditions. See Hart & Wechsler, The Federal Court and The Federal System 706–708 (1953); 96 U.Pa.L.Rev. 902 (1948); 9 U.Pitt.L. Rev. 304 (1948). Nonetheless, it is clear that this court cannot "write on a clean slate." It is bound to accept, "as part of the warp and woof" of the federal act, the rule that a carrier can effectively stipulate to relieve itself from liability for negligence resulting in injury to a pass rider. But cf. Martin v. Greyhound Corp., 6 Cir., 1955, 227 F.2d 501 (em-

ployee pass not a gratuity when issued pursuant to contract with union).

The combination of facts before me presents a concededly novel case, one that does not fall within the precise bounds of the Francis and Adams doctrine. In those cases, the injuries occurred during the course of interstate journeys on the defendants' trains. The plaintiff riders had quite plainly reached the point at which their right to use railroad facilities depended upon possession of a pass. Here, the injury to plaintiff Nida Schiller took place at a time when she was preparing to avail herself of her free transportation pass. However, the accident occurred before she reached the point at which the pass determined her right to use defendant's facilities. The place where plaintiff slipped and fell was one which was open to the public. Access to the staircase was available to persons who might wish to come on the premises for a variety of reasons, e. g., to greet arriving passengers or to patronize one of the many shops and eating places located in the terminal building.

■ In view of the present legislative and judicial attitude toward the exposure of the classes of persons permitted to enjoy free transportation to the risk of uncompensated injury, see 333 U.S. at pages 468–469, 68 S.Ct. at pages 622–623 (dissenting opinion), Martin v. Greyhound Corp., supra, 227 F.2d at page 504, I am not disposed to extend the Francis rationale to the situation presented here.[9]

state law and policy, a number of state courts had declared carrier free pass stipulations avoiding negligence liability invalid as against the public interest. See Francis v. Southern Pacific Co., supra, 333 U.S. at page 462, note 5, 68 S.Ct. at page 619 (dissenting opinion); 96 U.Pa.L.Rev. 902 (1948); 9 U.Pitt.L.Rev. 304 (1948). See also New York Central R. Co. v. Mohney, 1920, 252 U.S. 152, 40 S.Ct. 287, 64 L. Ed. 502; Lunsford v. Cleveland Union Terminals Co., 1960, 170 Ohio St. 349, 165 N.E.2d 3.

8. See note 7, supra. See generally Spiegel's Estate v. Commissioner of Int. Rev., 1949, 335 U.S. 632, 690, 69 S.Ct.

337, 93 L.Ed. 288 (Appendix B to dissenting opinion listing Supreme Court opinions resting upon rule that reenactment carries gloss of construction placed upon statute by the Court); Girouard v. United States, 1946, 328 U.S. 61, 69–70, 66 S.Ct. 826, 830, 90 L.Ed. 1084 (Court may reexamine and overrule prior decision which Congress might have but did not overrule. "It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.").

9. Cf. Alderman v. Baltimore & O. R. Co., D.C.S.D.W.Va.1953, 113 F.Supp. 881 (injury occurred when train was derailed). But see Wilder v. Pennsylvania R. Co.,

At the time plaintiff Nida Schiller was injured, she had not passed the point beyond which only passengers, *i. e.*, ticket holders or pass holders, were permitted. I therefore conclude that the conditions attached to her free ride were not yet operative, that her rights did not depend upon her status as a gratuitous passenger, and that the duty owed to her by defendant was co-extensive with that owed to non-passenger members of the public invited to come on the station premises.[10] In sum, I hold that the conditions of the passes issued to plaintiffs do not stand in the way of their recovery against the railroad.

In reaching this conclusion, I recognize that the principle enunciated in the dictum of the Tenth Circuit opinion in Ketchum v. Denver & Rio Grande Western R. Co., 1949, 175 F.2d 69, 71[11] is broad enough to support a contrary result. However, that court had before it the case of a free pass user who was injured while proceeding along the walkway from the station to the train for the purpose of boarding. The vast terminal facilities of the Pennsylvania Station in New York would not appear to be comparable to the boarding walkway at the Helper, Utah, station involved in the Ketchum case. A more appropriate area for comparison would be the train platforms in Pennsylvania Station and, as I have already indicated, those parts of defendant's facilities to which only ticket holders or pass riders are admitted. Although the Ketchum case is distinguishable on its facts, I do not wish to minimize the significance of the Tenth Circuit opinion or the opinion of the New York Court of Appeals in Wilder v. Pennsylvania R. Co., see notes 9 and 10, supra, as precedent favorable to defendant's position. Quite plainly, reasonable arguments can be made on either side. Nonetheless, in the absence of a controlling decision in this Circuit, I believe that it would be inappropriate for me to put aside my conclusion that the Supreme Court ruling as to the "in transit" accident in the Francis case was never intended to serve as a bar to a claim such as that asserted on behalf of Nida Schiller.

### The Absence of a Banister or Handrail

The defendant has also moved to set aside the judgment on the ground that, notwithstanding the absence of handrails or banisters on the stairway in question, there was no basis whatever for a finding

1927, 245 N.Y. 36, 156 N.E. 88, 52 A.L.R. 188 (pass condition requiring holder to assume risk of personal injury applied where plaintiff fell on slippery waiting room floor), followed in Lunsford v. Cleveland Union Terminals Co., 1960, 170 Ohio St. 349, 165 N.E.2d 3 (plaintiff injured after alighting from train while riding escalator from track level to terminal concourse); cf. Ketchum v. Denver & Rio Grande Western R. Co., 10 Cir., 1949, 175 F.2d 69 and cases cited therein (injuries in and about boarding area); Evens v. Texas Pac.-Missouri Pac. Terminal R. R., 5 Cir., 1943, 134 F.2d 275, certiorari denied 1943, 319 U.S. 756, 63 S.Ct. 1175, 87 L.Ed. 1709 (assumption of risk of ordinary negligence conceded by plaintiff).

10. Cf. De Renzis v. New York Rapid Transit Corp., 1st Dept.1939, 256 App. Div. 367, 9 N.Y.S.2d 983 (one descending staircase for purpose of boarding train is not yet a passenger). But see Wilder v. Pennsylvania R. Co., supra [245 N.Y. 36, 156 N.E. 90] in which the New York Court of Appeals reasoned that since the pass was headed "Pennsylvania System," not "Pennsylvania Railroad," it was "the express intention of the parties to include the station [and all connecting lines and terminals] * * * within the privileges and obligations of the [pass] agreement."

11. "The relation of carrier and passenger arises, and the duty of the carrier to the passenger attaches, when the latter enters the station premises for the purpose of boarding a train of the carrier. Such relationship precedes the actual boarding of the train and comes into being when a person, with the consent of the carrier, express or implied, enters the appropriate premises of the Railroad Company with the bona fide intent to avail himself of the transportation facilities which the carrier offers. It follows that the relationship of carrier and passenger existed at the time the accident occurred." 175 F.2d at page 71.

that the defendant failed to exercise reasonable care to maintain the staircase in a condition which was safe for public use. The Pennsylvania Station was completed many years ago and the work, including the stairway involved, was approved by the municipal department having jurisdiction. The building code then in existence contained no requirement that the stairway have a handrail and subsequent amendments to the building code have not added such a requirement for stairways of a similar design and construction. It was stipulated at the trial that the defendant had complied with the building code and that, at the time of the accident, the stairway remained in compliance therewith. On this score, the court charged the jury as follows:

"In determining whether defendant exercised reasonable care under all the circumstances, you should bear in mind that the stipulation of counsel with respect to defendant's compliance with the Building Code does not dictate the result which you should reach. In other words, you may take the stipulation into account and give it whatever weight you think it deserves. However, the stipulation does not in any way preclude you from determining that under all the circumstances placed before you defendant failed to exercise ordinary and reasonable care for the safety of passengers using station facilities."

The jury was also instructed that a finding that railings were absent or that the staircase was constructed of a smooth composite stone, without more, would not be sufficient to support a conclusion that defendant violated a duty owed to plaintiffs. The further explanation given by the court is set forth below:

"You must carry your inquiry one step further in order to justify an affirmative answer to these items.[12] You should answer Yes only if you believe that the absence of railings or the smooth surface of the stairs, under the circumstances existing at the time of the injury to Nida Schiller, were factors which contributed in rendering the staircase unsafe for the use of passengers or others coming on the station premises. If you believe that these conditions, although they existed, did not render the staircase unsafe, your response should be No."

The jury found that under the circumstances existing at the time of the accident, the absence of a banister or railings was the only factor which constituted negligence on defendant's part. It may well be, as the jury found on the issue of proximate cause, that lack of a handrail was a substantial factor in causing injury to Nida Schiller. Cf. Eager v. New York Rapid Transit Corp., 1936, 270 N.Y. 556, 200 N.E. 316 (defect in handrail, if it existed, was not a proximate cause of the accident). However, the New York cases[13] indicate that where other specifications of negligence are not established, the failure to provide a handrail, absent any statutory requirement or unusual hazard, will not support a finding against the property owner. Larkin v. O'Neill, 1890, 119 N.Y. 221, 23 N.E. 563; Brooks v. Bergdorf-Goodman Co., 1st Dept. 1958, 5 A.D.2d 162, 170 N.Y.S.2d 687; Union Bank and Trust Co. of Los Angeles v. Hattie Carnegie, Inc., 1st Dept. 1956, 1 A.D.2d 199, 149 N.Y.S.2d 122; Gauss v. State of New York,

12. See Appendix Question I(b) and (c).

13. Under the Supreme Court holding in the Francis case, I was required to look to federal law to determine the effect of the pass conditions on plaintiffs' claims. See Martin v. Greyhound Corp., 6 Cir., 1955, 227 F.2d 501. Having decided the preliminary question in plaintiffs' favor, I must look to state law for a definition of the obligation owed to plaintiffs as public users of defendant's premises. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; New York Central R. Co. v. Mohney, 1920, 252 U.S. 152, 40 S.Ct. 287; Alderman v. Baltimore & O. R. Co., D.C.S.D.W.Va. 1953, 113 F.Supp. 881.

3d Dept. 1955, 286 App.Div. 934, 142 N.Y.S.2d 870; Brown v. Mutual Life Ins. Co., 2d Dept. 1948, 273 App.Div. 817, 76 N.Y.S.2d 54, affirmed without opinion, 1948, 298 N.Y. 675, 82 N.E.2d 580; Schauf v. City of New York, Sup.Ct. Kings County 1960, 23 Misc.2d 585, 198 N.Y.S.2d 435; cf. Galligan v. Druidan Real Estate Co., 1934, 266 N.Y. 445, 195 N.E. 147 (evidence showing lack of proper handrail, narrow construction of step, and inadequate light).

■ Nothing in the evidence, apart from the specifications rejected by the jury, indicated that the stairway involved in this case was unusually hazardous or that the absence of handrails presented an unreasonable risk which did not exist in the case of stairs of similar design and use. See Larkin v. O'Neill, supra, 119 N.Y. at page 226, 23 N.E. at page 564. On the basis of the jury's responses to the special questions bearing upon the issue of negligence, I conclude that, as a matter of law, plaintiffs are not entitled to relief. Accordingly, I grant the defendant's motion to set aside the judgment entered by the court upon the finding of the jury that the lack of a banister or railings constituted negligence. Since the evidence failed to persuade the jury that defendant was negligent in any other respect, the applicable law requires me to direct the entry of judgment on the merits for defendant.

So ordered.

## APPENDIX

I Are you persuaded by a fair preponderance of the credible evidence that the defendant was negligent on November 17, 1956 in failing to maintain the staircase on the West 33rd Street side of the Pennsylvania Station, New York City, in a condition which was reasonably safe and suitable for public use because of one or more of the following factors:

(a) The defendant failed to use reasonable care in keeping the stairway reasonably free from moisture?

$\frac{\quad}{\text{Yes}} \frac{\text{No}}{\text{No}}$

(b) The staircase had no banister or railings on the sides or in the center thereof?

$\frac{\text{Yes}}{\text{Yes}} \frac{\quad}{\text{No}}$

(c) The staircase was constructed of smooth marble or stone?

$\frac{\quad}{\text{Yes}} \frac{\text{No}}{\text{No}}$

(d) There was improper and inadequate lighting over and near the said staircase?

$\frac{\quad}{\text{Yes}} \frac{\text{No}}{\text{No}}$

Please answer all of the above questions. If all your answers are in the negative, proceed no further and render a verdict for the defendant.

If one or more of the answers to questions (a), (b), (c) or (d) is in the affirmative, then please answer question II which follows:

II Are you persuaded by a fair preponderance of the credible evidence that the defendant's negligence was a proximate cause of the physical injuries for which the plaintiffs now seek to recover?

a – No
b – Yes
c – No
d – No
Yes

$\frac{\quad}{\text{Yes}} \frac{\quad}{\text{No}}$

If your answer is "No," you should go no further and render a verdict for the defendant. If your answer is "Yes," please answer question III which follows:

III Are you persuaded by a fair preponderance of the credible evidence that the plaintiff Nida Schiller was free from contributory negligence?

Yes
——
Yes No

If your answer is "No," you should go no further and render a verdict for the defendant. If your answer is "Yes," please answer question IV which follows:

IV Are you persuaded by a fair preponderance of the credible evidence that the plaintiff Carl Schiller was free from contributory negligence?

Yes
——
Yes No

Regardless of how question IV is answered, whether it be "Yes" or "No," please answer question V which follows:

V Before the departure of the 8:15 P.M. Chicago train did the plaintiffs have a bona fide intention of availing themselves of the restaurant facilities located in the defendant's station?

Yes
——
Yes No

 (a) The plaintiffs intended to avail themselves of such facilities to eat a meal and to buy sandwiches to take on the train.

 No
——
Yes No

 (b) The plaintiffs intended to avail themselves of such facilities solely for the purpose of purchasing sandwiches to take on the train.

Yes
——
Yes No

If either (a) or (b) is answered in the affirmative, please answer (c) and (d) which follow:

 (c) The plaintiffs first had the intention set forth in subdivision (b) of question V—at the time of arriving at defendant's Pennsylvania Station.
 ~~at the time of descending the West 23rd Street staircase.~~

 (please strike out the inapplicable underscored phrase.)

 (d) The plaintiffs first had the intention set forth in subdivision (b) of question V—at the time of arriving at defendant's Pennsylvania Station.
 ~~at the time of descending the West 23rd Street staircase.~~

Question VI, which follows, with respect to damages, should be answered provided any one of the subdivisions of question

I is answered in the affirmative and provided further that the answers to questions II and III are in the affirmative.

The answers to questions IV and V will be of assistance to the court in connection with the possible application of certain legal principles which need not concern you. Questions IV and V should be answered in any event, however.

VI (a) Please indicate the amount of damages, if any, which you find the plaintiff Nida Schiller has sustained as the result of the accident in suit for the following item:

 (1) Past, present and future pain and suffering $9,000.

 (b) Please indicate the amount of damages, if any, which you find the plaintiff Carl Schiller has sustained as a result of the accident in suit for the following items:

 (1) Medical expenses incurred by Carl Schiller for the benefit of his wife Nida Schiller. (The total amount of medical expenses has been stipulated to be $9,459.01). $9,459.01

 (2) Expenses incurred for household help. (This amount has been stipulated to be $210.00). $ 210.00

Question VII, which follows, with respect to the separate claim of Carl Schiller, should be answered provided any one of the subdivisions of question I is answered in the affirmative and provided further that the answers to questions II, III and IV are in the affirmative.

VII Please indicate the amount of damages, if any, which you find that the plaintiff Carl Schiller has sustained as a result of the accident in suit for the following item:

 (a) Deprivation of his wife's society and consortium $ None