Adelaide Viola GONZALES, Appellant,

v.

The BALTIMORE AND OHIO RAILROAD COMPANY, a Corporation, Appellee.

No. 8733.

United States Court of Appeals Fourth Circuit.

Argued Jan. 23, 1963.

Decided May 23, 1963.

Jeremy C. McCamic, Wheeling, W. Va. (McCamic & Tinker, and Jolyon W. Mc-Camic, Wheeling, W. Va., on brief), for appellant.

Fred L. Davis, Parkersburg, W. Va. (John R. Morris, and McDougle, Davis, Stealey & Morris, Parkersburg, W. Va., on brief), for appellee.

Before HAYNSWORTH, BOREMAN and BRYAN, Circuit Judges.

BOREMAN, Circuit Judge.

Mrs. Gonzales, plaintiff below, appeals from a final decision of the United States District Court for the Northern District of West Virginia vacating three special verdicts of the jury and a judgment for damages for her personal injuries, which judgment had been noted by the Clerk pursuant to Rule 58 Fed.R.Civ.P., and awarding judgment and costs to The Baltimore & Ohio Railroad Company, the defendant below.

Plaintiff was injured as the result of a fall in the baggage room located in the defendant's passenger station in Wheeling, West Virginia. Shortly before the accident, Mrs. Gonzales, a resident of Bond, Colorado, had entered the station, accompanied by relatives, to begin the second half of a trip by railroad from her home to Wheeling and return. Her husband was a long-time employee of the Denver & Rio Grande Western Railroad Company and, as the wife of such employee, plaintiff had been issued free passes by that railroad and by the connecting railroads on her route, one of which was the B. & O. The B. & O. pass, signed and accepted by Mrs. Gonzales, covered the portion of her trip between Wheeling and Chicago and contained the following provision:

"In consideration of the issuance of this free pass, I hereby assume all risks of personal injury and loss of or of damage to property from whatever causes arising, and release the company from liability therefor, and

I hereby declare that I am not prohibited by law from receiving free transportation and that this pass will be lawfully used."

At the defendant's baggage check counter in the station, after plaintiff exhibited her pass and presented her luggage to attendants, an open catch was noticed on her foot locker. The time for

the departure of her train was rapidly approaching and it became apparent that the attendant was having difficulty in closing the catch. Intending to render assistance to the attendant, one of plaintiff's male relatives who had accompanied her to the station walked down the hallway to a door marked "Employees Only," entered the baggage room and closed the door behind him. Mrs. Gonzales followed him a few moments later, opened the door to the baggage room, fell down the concrete steps just inside the baggage room and was injured. The evidence was conflicting as to whether either Mrs. Gonzales or her male relative was invited by word or gesture to come behind the baggage check counter. In her complaint and at the trial, plaintiff claimed that, subsequent to her fall and injury, she was detained and falsely imprisoned for some time by force or threats and against her will. However, no issue as to false imprisonment is involved in this appeal.

At the close of the evidence, the District Court submitted to the jury eight questions for special verdicts and reserved decision on defendant's motion for a directed verdict. In answer to the first three questions, the jury found the defendant guilty of negligence, Mrs. Gonzales free of contributory negligence, and awarded her damages in the amount of $2,500. No answer was returned by the jury to the fourth question—"Was the plaintiff invited by any of the defendant's employees to come behind the baggage check counter." The jury found also that the defendant railroad was not guilty of either willful or wanton negligence and not guilty of false imprisonment.

Later the District Court granted defendant's motion for judgment n. o. v., vacated the jury's verdicts on the first three questions, set aside the Clerk's entry of judgment for damages and entered judgment in favor of the defendant on the ground that the waiver of liability provision in Mrs. Gonzales' pass relieved the railroad of any liability to her for injuries resulting from ordinary negligence.

**■■** Plaintiff contends that her B. & O. pass was not gratuitous, that she had the status of a passenger for hire and, therefore, the general rule that a waiver of liability provision in a gratuitous pass insulates a railroad from liability for ordinary negligence is not applicable in this case. Her argument is based on the assumption that a contractual relationship can be found comparable to that which was held to provide consideration for a "free" pass for bus travel in Martin v. Greyhound Corporation, 227 F.2d 501 (6th Cir. 1955), cert. denied, 350 U.S. 1013, 76 S.Ct. 657, 100 L.Ed. 873 (1956). Plaintiff's ingenious theory is that the union, of which her husband was a member, had negotiated a contract with the Denver & Rio Grande Western for the benefit of the employees of that railroad; that as a result of collective bargaining concerning wages and other conditions of employment, her husband's employer railroad agreed to provide its long-time employees and members of their families with passes over its lines and the lines of other railroads; that this was a part of the employees' compensation. In addition, she claims that the B. & O. is obligated by the terms of a similar agreement between it and its employees to issue passes to its employees and their families, and that a binding agreement between the B. & O. and the Denver & Rio Grande Western requires each to issue passes for transportation on its railroad to employees (and their families) of the other railroad. She thus attempts to establish consideration for her pass through these several contracts and to show that her pass was not "free."

Although the plaintiff's argument was presented below, the trial court found no consideration for the pass issued to Mrs. Gonzales. In this we agree. Neither of the latter two alleged contracts upon which plaintiff relies was proved by competent evidence. However, it does affirmatively appear that the B. & O. was under no binding obligation to issue passes, even to its own employees and members of their families, and that passes

were issued on a complimentary basis. In any event, the Martin case, cited supra, is distinguishable. There the plaintiff, Mrs. Martin, was injured while riding on a bus owned by her husband's employer. Her pass, issued by the bus company, contained a waiver of liability provision. The court, permitting recovery of damages, specifically recognized that its rationale was not in accord with the line of federal decisions applicable to railroads under the Hepburn Act. Nothing in the Martin case suggests that there would be no waiver of carrier liability by one using a pass containing a provision similar to the one in the case at bar if either Martin or his wife had been riding on a bus of a different company or if railroads instead of buses had been involved.

Absent consideration for the issuance of the pass, the plaintiff's case must fall within the line of cases following Northern Pacific Railway Co. v. Adams, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513 (1904). In Adams it was held that a free pass with a waiver of liability provision similar to that of the B. & O. pass in the case at bar was effective to relieve the railroad of liability to a passenger, riding on such pass, for the railroad's ordinary negligence. The Adams decision was soon followed by Boering v. Chesapeake Beach Ry. Co., 193 U.S. 442, 24 S.Ct. 515, 48 L.Ed. 742 (1904). In 1906 Congress passed the Hepburn Act, 34 Stat. 584, which, with certain exceptions, prohibited issuance of passes by railroads. That act as amended[1] (especially by the Transportation Act of 1940, 54 Stat. 898, 900) prohibits the issuance by a railroad of a free pass except, *inter alia,* to its employees and their families or to the employees (and their families) of other railroads.

Following enactment of the Hepburn Act, the Supreme Court decided Charleston & West. Carolina Ry. Co. v. Thompson, 234 U.S. 576, 34 S.Ct. 964, 58 L.Ed. 1476 (1914), and Kansas City Southern Ry. Co. v. Van Zant, 260 U.S. 459, 43 S.Ct. 176, 67 L.Ed. 348 (1923), holding that the waiver of liability clause, in a free pass issued by an interstate railroad carrier under the Hepburn Act, was valid and that the person accepting and using such a pass was bound by its provisions and stipulations. More recently in Francis v. Southern Pacific Co., 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798 (1948),[2]

1. 49 U.S.C.A. § 1(7) (Hepburn Act as amended through 1952):
   "§ 1, par. (7). *Free transportation for passengers prohibited; exceptions; penalty.* No common carrier subject to the provisions of this chapter, shall, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees * * * and the families of any of the foregoing; * * * *Provided,* That this provision shall not be construed to prohibit the interchange of passes for the * * * employees of common carriers, and their families; * * * *And provided further,* That this provision shall not be construed to prohibit the privilege of passes or franks, or the exchange thereof with each other, for the * * * employees and their families of other common carriers subject to the provisions of this chapter: * * *."

2. The free pass in the Francis case stated that "the user assumes all risk of injury to person or property and of loss of property whether by negligence or otherwise, and absolves the issuing company * * * from any liability therefor." The Court noted that a similar provision in a free pass was involved in the 1904 decision in Northern Pacific Railway Co. v. Adams, 192 U.S. 440, 24 S.Ct. 408, 48 L.Ed. 513.
   In the Francis case, after referring to its 1904 decisions in the Adams and Boering cases, the Court said (333 U.S. at 449–450, 68 S.Ct. at 613):
   "* * * Then in 1906 came the Hepburn Act which under pain of a criminal penalty prohibited a common carrier subject to the Act from issuing a 'free pass' except, *inter alia,* to 'its employees and their families.' 34 Stat. 584, 49 U.S.C. § 1(7). Thereafter in 1914 the Court held that the rule of the Adams case was applicable under the federal statute and that the 'free pass' was nonetheless a gratuity though issued to an employee of the carrier. Charleston & W. C. R. Co. v. Thompson, 234 U.S. 576 [34 S.Ct. 964, 58 L.Ed. 1476]. Kansas City So. R. Co. v. Van Zant, 260

the Court reviewed its prior decisions and held that the free-pass provision of the Hepburn Act was a regulation of interstate commerce; the incidents and consequences of the pass were controlled by that act to the exclusion of state law and state policies and the Adams rule of exemption from liability applied to interstate railroads.

Thus, it is clear that the waiver of liability provision in the B. & O. pass insulates the defendant railroad from liability for *ordinary* negligence if the pass provisions were applicable and operable at the time of the accident.

On the question of the applicability of the pass at the time she was injured, plaintiff argues in the alternative that she either had not yet entered the area, the passenger waiting room, where the waiver provision in her pass could operate to relieve the railroad of liability for ordinary negligence, or that she left this area upon the request of the baggage checkman and became an invitee when she entered the baggage room door.

In Ketchum v. Denver & Rio Grande Western R. Co., 175 F.2d 69 (10th Cir. 1949), the court said:

"The relation of carrier and passenger arises, and the duty of the carrier to the passenger attaches, when the latter enters the station premises

for the purpose of boarding a train of the carrier. Such relationship precedes the actual boarding of the train and comes into being when a person, with the consent of the carrier, express or implied, enters the appropriate premises of the Railroad Company with a bona fide intent to avail himself of the transportation facilities which the carrier offers." 175 F.2d at 71.

The court there held that the waiver of liability clause was effective to relieve the railroad of liability where the passenger, having signed and accepted the free pass, was injured while proceeding along the walkway from the station to the train for the purpose of boarding.

Similar applications of the waiver of liability provisions of a free pass relieved the railroads of liability for ordinary negligence in Wilder v. Pennsylvania R. Co., 245 N.Y. 36, 156 N.E. 88, 52 A.L.R. 188 (N.Y.1927), where the passenger fell on a soapy floor of the waiting room of the codefendant's New York City Station and the pass provision protected the terminal company as part of "The Pennsylvania System"; in Lunsford v. Cleveland Union Terminals Co., 170 Ohio St. 349, 165 N.E.2d 3 (Ohio 1960), where passenger injured on an escalator in a

---

U.S. 459 [43 S.Ct. 176, 67 L.Ed. 348], followed in 1923 and held that the liability of an interstate carrier to one riding on a 'free pass' was determined not by state law but by the Hepburn Act. The Court said, [260 U.S.] p. 468 [43 S.Ct. at page 177, 67 L.Ed. 348], 'The provision for passes, with its sanction in penalties, is a regulation of interstate commerce to the completion of which the determination of the effect of the passes is necessary. We think, therefore, free passes in their entirety are taken charge of, not only their permission and use, but the limitations and conditions upon their use. Or to put it another way, and to specialize, the relation of their users to the railroad which issued them, the fact and measure of responsibility the railroad incurs by their issue, and the extent of the right the person to whom issued acquires, are taken charge of.'

"For years this has been the accepted and well-settled construction of the Hep-

burn Act. During that long period it stood unchallenged in this Court and, so far as we can ascertain, in Congress too. Then came the Transportation Act of 1940, 54 Stat. 898, 900, with its comprehensive revision of the statutes of which the Hepburn Act was part. Amendments were made to the free-pass provision of the Act to permit free transportation of additional classes of persons. No other amendments to the free-pass provision were made. It was reenacted without further change or qualification. * * * But in the setting of this case, we find the long and well-settled construction of the Act plus reenactment of the free-pass provision without change of the established interpretation most persuasive indications that the rule of the Adams, Thompson, and Van Zant cases has become part of the warp and woof of the legislation. * * * "

passenger terminal operated by an independent company could not recover because the terminal was part of the "New York Central System" protected by the waiver of liability clause in the pass; and in McKaig v. Kansas City Terminal Ry. Co., 355 S.W.2d 409 (Mo.App.1962), where passenger was injured while changing trains at defendant's depot in the course of a trip taken on railroad passes.

■■ Mrs. Gonzales, however, places great reliance upon Schiller v. Pennsylvania Railroad Company, 192 F.Supp. 502 (S.D.N.Y.1961), as supporting her position. In that case the passenger was injured descending steps of the Pennsylvania Station in New York City. She was on her way to a restaurant to purchase sandwiches for use on a train which had no diner. The court, distinguishing the above cited cases, held that the area was open to the general public for varied uses and that Mrs. Schiller was not yet within the scope of her pass and its liability-limiting provision. Whatever the authority of Schiller as opposed to the numerous contrary holdings, the facts of the instant case are distinguishable. Mrs. Gonzales was checking her baggage for the express purpose of traveling on the B. & O. train and in the process was required to show her pass to the attendants. It is clear to us, as it was to the District Court, that she was using services and facilities of the defendant railroad available only to passengers.

Mrs. Gonzales claims in her alternative argument that the invitation of the baggage man to come into the baggage check room to help him perform his duty as a carrier in properly handling her luggage changed her status from that of a mere licensee to a business invitee. This argument presupposes a specific finding that Mrs. Gonzales was invited to enter a portion of the station where access was normally prohibited to all except employees. No such finding was made. The jury considered the issue in the fourth question submitted to it and failed to answer. There was no request made to the court that the jury be required to resume deliberations and answer the question. Clearly Mrs. Gonzales failed to carry her burden of proof. The trial judge found the weight of the evidence was against the plaintiff on this point and we reach the conclusion that the record would not warrant any change in this result. Therefore, it is plain that Mrs. Gonzales was a mere licensee and, under the provisions of her gratuitous pass, was not entitled to recover damages from the defendant railroad for injuries resulting from its ordinary negligence. The action of the District Court in granting defendant's motion for judgment n. o. v. is

Affirmed.